**Edward J. CARLOUGH, et al., on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**AMCHEM PRODUCTS, INC., et al., Defendants and Third Party Plaintiffs,**

v.

**ADMIRAL INSURANCE COMPANY, et al., Third Party Defendants.**

Civ. A. No. 93–0215.

United States District Court, E.D. Pennsylvania.

Oct. 27, 1993.

Stephen B. Burbank, pro se.

Jonathan W. Miller, Gene Locks, Greitzer and Locks, Philadelphia, PA, Joseph F. Rice, Ronald Motley, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Russell W. Budd, Brent R. Rosenthal, Frederick M. Baron, Baron & Budd, P.C., Dallas, TX, Desa A. Ballard, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, SC, for Edward M. Carlough, Pavlos Kekrides, Nafssica Kekrides, Laverne Winbun, Ambrose Vogt, Jr., Joanne Vogt, Carlos Raver, Dorothy M. Raver, John A. Baumgartner, Anna Marie Baumgartner, Timothy Murphy, Gay Murphy, Ty T. Annas and Fred Angus Sylvester.

Charles B. Blakinger, R. Nicholas Gimbel, Michael T. Starczewski, Hoyle, Morris & Kerr, Philadelphia, PA, Theodore Voorhees, Jr., Lawrence J. Eisenstein, Rachel S. Kronowitz, Charles E. Buffon, Neil K. Roman, Russell H. Carpenter, Jr., Covington & Burling, William R. Hanlon, Wendy S. White, David Booth Beers, Elizabeth Runyon Geise, John D. Aldock, Shea & Gardner, Washington, DC, John G. Gaul, Center for Claims Resolution, Princeton, NJ, for Amchem Products, Inc., A.P. Green Industries, Inc., Armstrong World Industries, Inc., Certainteed Corp., C.E. Thurston & Sons, Inc., Dana Corp., Ferodo America, Inc., Flexitallic, Inc., GAF Bldg. Materials Corp., I.U. North America, Inc., Maremont Corp., National Gypsum Co., National Services Industries, Inc., Nosroc Corp., Pfizer Inc., Quigley Co., Inc., Shook & Fletcher Insulation Co., T & N, PLC, Union Carbide Chemicals and Plastics Corp. and U.S. Gypsum Co.

Steven Kazan, Kazan, McClain, Edises & Simon, Oakland, CA, Harry F. Wartnick, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Inc., San Francisco, CA, for Northern California Asbestos.

David G. Davies, Ray, Robinson, Carle, Davies & Snyder, Cleveland, OH, for Multiple Shipowners Represented by Ray, Robinson, Carle, Davies & Snyder.

Brian Wolfman, Public Citizen Litigation Group, Washington, DC, for Myles O'Malley, Public Citizen, Inc., White Lung Ass'n of New Jersey, and Nat. Asbestos Victims Legal Action Organizing Committee.

Arthur H. Bryant, Trial Lawyers for Public Justice, Washington, DC, Roberta B. Walburn, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Asbestos Victims of America, Trial Lawyers for Public Justice.

Philip A. Harley, Alan R. Brayton, Brayton, Gisvold & Harley, Novato, CA, for Certain Class Members—"Brayton Parties".

Michael V. Kelley, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Cleveland, OH, for "Labor Union Objectors": Gary Fujawa—South Bend, Indiana Intern. Vice President, Intern. Ass'n of Heat and Frost Insulators & Asbestos Workers, Michael Morgan—Cleveland, Ohio Business Manager, United Ass'n of the Plumbing and Pipe Fitting Industry, Anthony Yakemowicz—Pittsburgh, Pennsylvania, Intern. Vice President, Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Lawrence McManamon—Cleveland, Ohio, Intern. Vice President, Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers.

Christine T. Milliken, Washington, DC, for National Ass'n of Attys. Gen., amicus curiae.

Joseph A. Rosenborough, Georgia Pacific Corp., Atlanta, GA, for Georgia–Pacific Corp., amicus curiae.

Joel M. Ressler, Office of Atty. Gen., Harrisburg, PA, for Attorney General, PA, amicus curiae.

Michael E. McGilvery, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for Admiral Ins. Co.

Allan C. Molotsky, Post & Schell, P.C., Stephen F. Brock, Joseph G. Manta, Manta and Welge, Philadelphia, PA, Maryann C. Hayes, Pope & John, Ltd., Chicago, IL, for Affiliated FM Ins. Co., Appalachian Ins. Co. of Providence.

Norman L. Haase, Dunn, Haase, Sullivan, Mallon, Cherner & Broadt, Media, PA, Aaron L. Bowers, Lynberg & Watkins, Los Angeles, CA, for Union Atlantique de Reassurances, New Hampshire Ins. Co. U.K. Ltd., Landmark Ins. Co., Lexington Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA, AIU Ins. Co., American Home Assur. Co.,

Granite State Ins. Co., Insurance Co. of State of Pennsylvania.

Mitchell S. Pinsly, Philadelphia, PA, Elit R. Felix, II, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Allianz Ins. Co., Chicago Ins. Co., Interstate Fire & Cas. Co., and Allianz Underwriters Ins. Co.

Walter H. Swayze, III, Liebert, Short & Hirshland, Stephen W. Miller, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, Philip J. McGuire, Virginia M. Vermillion, Gleason, McGuire & Schreffler, Chicago, IL, for Allstate Ins. Co., and Northbrook Indem. Co.

Philip L. Greenberg, John M. Fitzpatrick, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for American Bankers Ins. Co. of Florida and Old Republic Ins. Co., Puritan Ins. Co.

Joseph M. Oberlies, Connor and Weber, P.C., Philadelphia, PA, for American Centennial Ins. Co.

Lawrence A. Nathanson, Wilson M. Brown, III, Drinker, Biddle & Reath, Philadelphia, PA, for American Motorists Ins. Co. and Lumbermans Mut. Cas. Co.

Stephen F. Brock, Joseph G. Manta, Manta and Welge, Philadelphia, PA, Thomas R. Newman, James H. Harrington, Christine L. Andreoli, Newman & Harrington, New York City, for American Re–Insurance Co.

Elit R. Felix, II, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Argonaut Ins. Co.

Thomas C. Delorenzo, John S. Tucci, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Linda B. Foster, Neely & Player, Atlanta, GA, for Atlanta Intern. Ins. Co.

Jay M. Levin, Cozen and O'Connor, Philadelphia, PA, for C.E. Heath Compensation and Liability Ins. Co.

William H. Black, Jr., Hecker, Brown, Sherry and Johnson, Philadelphia, PA, for Centennial Ins. Co.

David E. Sandel, Jr., White and Williams, Lawrence M. Silverman, Philadelphia, PA, for Central Nat. Ins. Co. of Omaha.

Mitchell S. Pinsly, Philadelphia, PA, Henry E. Hockeimer, Jr., Steven K. Davidson, Daniel Sauls, Steptoe & Johnson, Washington, DC, for City Ins. Co., Home Indem. Co. and Home Ins. Co.

Robert R. Reeder, Cozen & O'Connor, Keith R. Dutill, John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, PA, Stephen C. Baker, Stradley, Ronon, Stevens & Young, Malvern, PA, for Columbia Cas. Co.

Robert R. Reeder, Jay M. Levin, Cozen & O'Connor, Philadelphia, PA, for Commercial Union Ins. Co., and Safeco Ins. Co. of America.

Thomas Richichi, Washington, DC, for Compagnie Europeenne de Reassurances.

Daniel P. Lynch, Timby, Brown & Timby, Philadelphia, PA, Michael V. Corrigan, David A. Vann, Simpson, Thacher & Bartlett, New York City, for Constitution State Ins. Co., Travelers Indem. Co. and Travelers Ins. Co.

Keith R. Dutill, John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, PA, Stephen C. Baker, Stradley, Ronon, Stevens & Young, Malvern, PA, for Continental Cas. Co.

Michael J. Jones, Jo Ann Burk, Cuyler, Burk & Matthews, Morristown, NJ, for Employers Mut. Cas. Co.

Daniel P. Lynch, Timby, Brown & Timby, Philadelphia, PA, for Evanston Ins. Co.

Stephen F. Brock, Manta & Welge, Philadelphia, PA, Thomas R. Newman, James H. Harrington, Christine L. Andreoli, Newman & Harrington, New York City, for Executive Re Indem. Inc.

William P. Shelley, Countess & Shelley, Philadelphia, PA, for Federal Ins. Co.

Donald P. Jacobs, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ, for General Reinsurance Corp. and North Star Reinsurance Corp.

Sean R. Kelly, David D'Aloia, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, E. Timothy Poindexter, Law Offices of William W. Kimball, Philadelphia, PA, for Gibraltar Cas. Co., and Prudential Reinsurance Co.

Patrick W. Kittredge, Daniel J. Maher, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, Jay Lavroff, Timothy D. Lyons, Lindabury, McCormick & Estabrook, Westfield, NJ, for Great American Ins. Co.

David E. Sandel, Jr., White and Williams, Justin J. McCarthy, Exton, PA, Patrick J. Dwyer, Polstein, Ferrara & Dwyer, P.C., New York City, for Highlands Ins. Co.

Wendy H. Koch, Rawle and Henderson, Philadelphia, PA, Kevin Barry McHugh, Carl H. Sword, Costello & Shea, New York City, for Houston Gen. Ins. Co.

Thomas C. Delorenzo, Marshall, Dennehey, Warner Coleman & Goggin, Philadelphia, PA, for Jefferson Ins. Co. of New York.

Susan G. Fillichio, Kevin G. Costello, Sedgwick, Detert, Moran & Arnold, New York City, for La Preservatrice Fonciere Tiard, Lilloise D'Assurances.

Rudolph Garcia, Saul, Ewing, Remick & Saul, Philadelphia, PA, Thomas W. Brunner, William G. Miller, Samuel D. Walker, Wiley, Rein & Fielding, Washington, DC, for Maryland Cas. Co.

Robert Caplan, Louis J. Isaacsohn, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, PA, for Mead Reinsurance Corp.

Allan C. Molotsky, Post & Schell, P.C., Philadelphia, PA, for Michigan Mut. Ins. Co.

Richard W. Yost, L'Abbate & Balkan, Philadelphia, PA, James W. Greene, Bromley, Greene & Walsh, Washington, DC, for National American Ins. Co. of California, Yosemite Ins. Co.

Bernd G. Heinze, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, PA, for Northwestern Nat. Ins. Co., Safety Nat. Cas. Corp.

Lewis R. Olshin, Duane, Morris & Heckscher, Philadelphia, PA, for Pennsylvania Manufacturers' Ass'n Ins. Co.

Lawrence M. Silverman, Philadelphia, PA, for Protective Nat. Ins. Co. of Omaha.

Justin J. McCarthy, Exton, PA, Patrick J. Dwyer, Polstein, Ferrara & Dwyer, P.C., New York City, for Ranger Ins. Co.

Stephen P. Chawaga, Fitzpatrick and Tanker, Philadelphia, PA, Peter N. Hillman,

Debra M. Patalkis, Chadbourne & Parke, New York City, for Republic Ins. Co.

Larry G. Cobb, Cobb, Raynor & Mandel, Bala Cynwyd, PA, Bethany K. Culp, Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for St. Paul Fire and Marine Ins. Co., St. Paul Guardian Ins. Co.

Larry G. Cobb, Cobb, Raynor & Mandel, Bala Cynwyd, PA, Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for St. Paul Surplus Lines Ins. Co.

Lisa B. Zucker, German, Gallagher & Murtagh, Philadelphia, PA, David Holmes, Sheft & Sheft, New York City, for Stonewall Ins. Co., Stonewall Surplus Lines Ins. Co.

Suzette D. Bonfiglio, Jubanyik, Varbalow, Tedesco, Shaw & Shaffer, Cherry Hill, NJ, for Sun Alliance and London Ins. PLC.

Wendy H. Koch, Rawle & Henderson, Philadelphia, PA, for Tokio Marine & Fire Ins. Co. Ltd.

Michael P. Shay, Shay, Santee & Kelhart, Bethlehem, PA, for Unigard Sec. Ins. Co.

Russell W. Budd, Frederick M. Baron, Brent M. Rosenthal, Baron & Budd, P.C., Dallas, TX, for Carl D. Roland, Gloria J. Roland, Walter L. Mays, Sr. and Shirley G. Mays.

Tybe A. Brett, Antonio D. Pyle, Henderson & Goldberg, P.C., Pittsburgh, PA, for Ronald J. Smith, Josephine Smith, Walter Yastion, Helen Mae Yastion, Harry L. Cooper, Margaret J. Cooper, Jordan Kushnier, Mary Kushnier, Randy L. Ward, Samuel J. Gallaher, Marion E. Gallaher.

Gita F. Rothschild, McCarter & English, Newark, NJ, for Keene Corp.

Leonard C. Jaques, The Maritime Asbestosis Legal Clinic, Detroit, MI, for Maritime Asbestos Claimants, United States Merchant Marine Seamen.

Donald I. Marlin, Weitz & Luxenberg, P.C., New York City, for Ralph T. Mitchell, Howard I. Cummings, Matthew T. Mullero, Andrew J. Kurtz, and Harold E. Switzer.

Robert N. Spinelli, Kelley, Jasons, McGuire & Spinelli, Philadelphia, PA, Anne E. Cohen, Debevoise & Plimpton, New York

City, for Owens–Corning Fiberglas Corp., amicus curiae.

Brian E. Berwick, Asst. Atty. Gen. Environmental Protection Div., Austin, TX, for State of Texas, amicus curiae.

Stephen M. Snyder, Brobeck, Phleger & Harrison, San Francisco, CA, for Fibreboard Corp., amicus curiae.

James J. Restivo, Jr., Kathy K. Condo, Reed, Smith, Shaw & McClay, Pittsburgh, PA, Andrew J. Trevelise, Reed, Smith, Shaw & McClay, Philadelphia, PA, for Pittsburgh Corning Corp., amicus curiae.

Robert H. Riley, Schiff, Hardin & Waite, Chicago, IL, James D. Miller, King & Spalding, Washington, DC, R. Bruce Shaw, Nelson, Mullins, Riley & Scarborough, Columbia, SC, for Owens–Illinois, Inc., amicus curiae.

Jay Hughes, Boca Raton, FL, Robert A. Murphy, Casner & Edwards, Boston, MA, for W.R. Grace & Co.—Conn., amicus curiae.

John Mc N. Broaddus, Connerton, Ray & Simon, Washington, DC, for Laborers' Intern. Union of North America.

Tybe A. Brett, Henderson & Goldberg, P.C., Pittsburgh, PA, for Gregory Gore, William C. Ferrel, Michael P. Conley, and Lynn A. Conley.

Paul Safchuck, White Lung Ass'n, Baltimore, MD, for White Lung Ass'n, National Non–Profit Asbestos Victims' Organization.

Russell W. Budd, Frederick M. Baron, Brent M. Rosenthal, Baron & Budd, P.C., Dallas, TX, Brian Stuart Koukoutchos, Lexington, MA, Laurence H. Tribe, Harvard University Law School, Cambridge, MA, for Shelva D. Wiese, Carl D. Payne, Sr., and Helen E. Payne.

Redding Pitt, Asst. Atty. Gen., Office of Atty. Gen., State of Ala., Montgomery, AL, for State of Ala., amicus curiae.

Richard C. Binzley, Harold W. Henderson, Thompson, Hine & Flory, Cleveland, OH, for Multiple Shipowners, represented by Thompson, Hine and Flory.

Jeffrey Robert White, Washington, DC, for Association of Trial Lawyers of America, amicus curiae.

Laurence Gold, General Counsel–AFL–CIO, Washington, DC, for American Federation of Labor and Congress of Industrial Organizations, amicus curiae.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

This is a class action for asbestos-related personal injuries. Currently before me is the joint motion of the settling parties for approval of notice to the class (Document No. 445).

## I. BACKGROUND [1]

On January 15, 1993, counsel for the plaintiff class filed the complaint in this action along with motions for class certification and for approval of a proposed settlement agreement ("proposed settlement" or "settlement") between the plaintiff class and the members of the Center for Claims Resolution ("the CCR defendants"). On the same day as the complaint was filed, the CCR defendants answered the complaint and joined in plaintiffs' request that the class be certified and the settlement agreement be approved. The complaint describes the plaintiff class as including all persons who were exposed occupationally, or through the occupational exposure of a spouse or household member, to asbestos or asbestos-containing products for which one or more of the CCR defendants may bear legal liability, and who had not filed a personal injury lawsuit based on that exposure as of January 15, 1993. The occupational exposure must have occurred in the United States or its territories, or while working aboard U.S. military, merchant, or passenger ships, and the occupationally exposed persons must have resided in the U.S. or its territories as of January 15, 1993. Legal representatives of such occupationally exposed persons who had not, as of January 15, 1993, filed a lawsuit based on that exposure, are also included in the class.

---

1. For more background information, *see Carlough v. Amchem Prods., Inc.,* 5 F.3d 707 (3d Cir.1993); *Carlough v. Amchem Prods., Inc.,* 834 F.Supp. 1437 (E.D.Pa.1993).

On January 29, 1993, the Honorable Charles R. Weiner of this Court granted conditional certification of an opt-out plaintiff class pursuant to Fed.R.Civ.P. 23(b)(3), and assigned to me the scheduling and review of settlement procedures and the resolution of objections to the settlement itself. Because of the number of objections to the subject matter jurisdiction of this Court, the fairness of the proposed settlement, and the constitutionality of notice to absent class members, I issued a Scheduling Order on June 2, 1993, setting dates for briefing and argument on these issues. Various objectors filed memoranda of law explaining legal bases for their objections, to which the named plaintiffs and the CCR defendants (hereinafter the "settling parties") responded. Hearings were held on August 23, 1993 and October 5, 1993, at which time the objectors and the settling parties were heard.

On October 6, 1993, I found that this lawsuit is a justiciable case or controversy pursuant to Article III of the Constitution and that this Court has subject matter jurisdiction over this lawsuit pursuant to the diversity statute, 28 U.S.C. § 1332. *Carlough v. Amchem Prods., Inc.,* 834 F.Supp. 1437 (E.D.Pa.1993). This memorandum addresses (1) whether the proposed settlement is fair for the preliminary purpose of sending notice to the class, and (2) whether the plan for dissemination of notice and the contents of the notice satisfy the requirements of Fed. R.Civ.P. 23 ("Rule 23") and the due process clause of the Constitution.

## II. DISCUSSION

### A. *Fairness of the Proposed Settlement*

■ Before deciding whether the settling parties plan for dissemination of the notice and the contents of the notice should be approved, I must make a preliminary determination of whether the proposed settlement is fair. *See* Manual for Complex Litigation § 30.44, at 241 (2d ed. 1985).

After hearing extensive argument at the hearing on August 23, 1993, and having reviewed the proffers of the settling parties and the legal memoranda filed by the objectors, I find that the proposed settlement is fair for the preliminary purpose of deciding whether to send notice to the class in that it appears to be the product of serious, informed, non-collusive negotiations,[2] it has no obvious deficiencies, it does not improperly grant preferential treatment to class representatives or segments of the class, and it clearly falls within the range of possible approval.[3] *See Id.* Although I accept as reliable the proffers of the settling parties as to the fairness of the proposed settlement and find based on the information before me that the terms of the proposed settlement are fair to all members of the class, I will undertake a more detailed examination and analysis of the additional data in support of the proposed settlement during the final hearing process.

### B. *Adequacy of Notice to the Class*

#### 1. *Dissemination of Notice*

##### a. *Description of the Plan for Dissemination of Notice*

The settling parties' proposed plan for dissemination of notice (the "notice plan") has several features:[4] (1) individual notice, by first class mail, to the 9,000–plus plaintiffs who have filed suit against one or more of the CCR defendants since this class action was filed on January 15, 1993, (2) efforts to identify other absent class members and individual notice provided to those persons identified, and (3) notice to all others by publica-

---

**2.** *See Carlough v. Amchem Prods., Inc.,* 834 F.Supp. 1437 (E.D.Pa.1993) (finding that this case is a non-collusive case or controversy under Article III of the Constitution).

**3.** In reviewing the fairness of the proposed settlement, I have carefully considered all of the arguments made by the various objectors. I find these arguments unpersuasive, and thus have not addressed them in this memorandum.

**4.** The description of the notice plan is derived from the Declaration of Katherine Kinsella, Senior Vice–President and Senior Consultant to The Kamber Group, which is attached to the Joint Motion of the Settling Parties for Approval of Notice to the Class. Class counsel and the CCR defendants retained Ms. Kinsella and the Kamber Group to design the notice plan.

tion and through various persons and organizations.

The settling parties contend that the only class members whose identities are currently known are the 9,000–plus plaintiffs who have filed suit against one or more of the CCR defendants since this class action was filed on January 15, 1993. The notice plan provides for individual notice to be sent by first class mail to counsel for each of these plaintiffs.[5]

Given the potential size of the plaintiff class, the number of currently identifiable class members is relatively small. Because of this, the notice plan also includes substantial measures to find the names and addresses of other class members and includes individual notice provided directly to those identified by these measures. These efforts will be made through contacts with national and local labor unions and plaintiffs' lawyers, and through paid and unpaid advertising.

With respect to the unions, the settling parties have drawn up a list of 56 national or international unions that may have current or retired members in the plaintiff class.[6] Because the unions do not typically make their member lists available to the public, the settling parties will send a letter to each of the 56 unions to ask for names and addresses of any current or retired member who worked with or around asbestos or asbestos-containing products. Complete individual notice packets will be mailed to all names and addresses generated through these efforts. Alternatively, if such names and addresses cannot be furnished, the settling parties will propose some alternative means, such as a mailing by the union at the CCR defendants' expense, through which notice of this class action and proposed settlement may be sent to current and retired union members.[7] If any national or international union declines to help identify or mail notices to its members, letters will be sent to affiliated local unions containing the same request for help.[8]

With respect to efforts to identify individual class members through contacts with plaintiffs' attorneys, complete information packets will be mailed under the notice plan to the 1000–plus attorneys who have filed claims against one or more of the CCR defendants. Each attorney will be asked to give the settling parties the names and addresses of any potential class members known to the attorney, and complete notice packets will be mailed to those persons identified.

Finally, the notice plan provides for a campaign of paid and unpaid advertising which is designed to result in further individual notice. The campaign will encourage potential class members to call a toll-free telephone number or to contact class counsel, and a complete notice packet will be sent to those who call.

The paid advertising component of the publication campaign consists of two rounds of advertisements in newspapers and in *Parade* magazine and a 30–second television advertisement. Before deciding where to ad-

---

5. The notice materials will be sent directly to any plaintiff who is not represented by counsel. This list of plaintiffs will be continually updated throughout the proposed notification period, with complete individual notice packets sent to new entrants on the list up until two weeks prior to the close of the notification period.

6. The AFL–CIO, a federation of eighty-six unions purportedly with 13.3 million members, has expressed its support of the proposed settlement in this case. The AFL–CIO stated in its *amicus* brief that it has had a "long standing interest in asbestos compensation and litigation issues," because "[a] substantial percentage of the workers exposed to asbestos through their jobs in the United States have been union members." *Amicus* Brief of AFL–CIO at 1 (filed September 24, 1993). The AFL–CIO also stated that it "intends to take an active part ... in assisting the settling

parties in disseminating the court approved notice to union members." *Id.* at 4.

7. If any union is willing only to enclose a one-page notice concerning this case with some other union mailing, such as pension checks, the union will be given copies of the shorter print advertisement, described below, for insertion in the mailing. The CCR defendants will pay the mailing's costs.

8. The local unions will be those in areas in the United States where large numbers of claims have been filed against the CCR defendants. And, as with the national or international unions, if certain local unions are willing only to enclose a one-page notice with another union mailing, the short print ad will be used, and the CCR defendants will pay the costs of the mailing.

vertise, the settling parties determined that, based on various factors, the primary target group for the notice plan would likely be males age 45 or older. Thus the paid advertising plan is weighted towards this group, although it also targets males and females ages 35 or older.[9]

The first round of print advertising will consist of a one-half page ad [10] in 292 newspapers covering 136 media markets.[11] The ad will generally be run in the Sunday edition of those newspapers, as it typically has the largest circulation of any day of the week. To the extent possible, the ad will be placed in the sports section. The approximate circulation of the 292 selected newspapers is 46 million.

A second round of print advertising will run two weeks after the first and will use the same ad. This round will be run in 59 media markets which were chosen by the settling parties because they have historically generated large concentrations of asbestos claims against the CCR defendants. These markets include 114 newspapers. During this period, the same ad will also be placed in a full page of *Parade* magazine. *Parade* is the largest general circulation magazine in the United States and is included in 351 local newspapers. *Parade* has a circulation of over 36 million and will cover 11.8 million households that are outside the media markets where the newspaper ads will be purchased.

The final element of the paid advertising campaign is a commercial spot television notice. In deciding where to air the television notice, the settling parties selected eighty media markets based partly on information concerning historic case fillings against the CCR defendants. Those eighty markets include 64 million television households, which is 69% of all television households in the United States. The 30–second television notice, weighted toward the likely class members, will appear multiple times in each market, at different times of day. All in all, the settling parties contend that the television notice should be seen cumulatively over 250 million times by adults ages 35 and older.[12]

Under the notice plan, the television notice will be aired throughout the week before the first round of paid newspaper advertising. The ad will have both a visual and an audio component and review of the proposed "copy" shows that it will encourage potential class members to look for the print ad in the newspapers (where a more extensive explanation of the class action and the proposed settlement will be found). The "copy" reveals as well that the television ad, just as the print ad, will urge all those who believe they may be a class member to call a toll-free telephone number to receive a complete individual notice packet.

In addition to paid advertising, the notice plan also calls for unpaid advertising, that is efforts to have public service announcements concerning the case and the proposed settlement both broadcast and published. A press release or newscast script will be sent to all national wire services and radio stations, and to all major print, radio, and television outlets in major media markets. A cover letter will ask that these media outlets assist in publicizing the class action and proposed settlement by airing public service announcements.

The efforts described above to obtain the names and addresses of absent class members through contacts with national and local labor unions and plaintiffs' attorneys, and through paid and unpaid advertising are only

9. For a discussion of how the settling parties chose the newspapers and media markets in which to advertise, *see Memorandum in Support of Joint Motion of the Settling Parties for Approval of Notice to the Class* at 14.

10. The ad will be one full-page in tabloid-style newspapers.

11. As discussed below, the ad will describe, *inter alia*, the class, the proposed settlement, the consequences of not opting out, the right to appear and object to the proposed settlement, and the

procedures for exclusion from the class. *See* Exhibit C to the Joint Motion. The ad will also urge those who believe they are members of the class to call the toll-free telephone number so that a complete notice packet can be mailed to them.

12. In 56 of the 80 media markets, the ad will reach 86.4% of the television households, with a frequency of 4.6 times. In the remaining 24 markets, the ad will reach 73.7% of the television households, with a frequency of 2.7 times.

partly designed to result in further individual notice. These same efforts, especially the advertising campaign, are also designed to, on their own, provide Rule 23 notice to those class members who do not respond and whose names and addresses cannot otherwise be ascertained through reasonable effort. *See* Manual Complex Litigation § 30.211, at 221 (In class actions, notice by publication "may be the principal means for informing [certain class members] of their Rule 23 rights.").

For example, with respect to the contacts with unions, in addition to the efforts to identify individual class members, the notice plan provides that notification packets be sent to key officials at each of the 56 unions identified by the settling parties. These mailings are intended to further urge the unions to use all reasonable means to notify current members and retirees about the class action and settlement. Camera-ready materials will be provided for immediate use in any publications distributed by the unions to their members and retirees. In addition, identical packets will be sent to officials of other labor bodies that are comprised of various combinations of the 56 unions listed, and officials at the approximately 10,000 to 15,000 local labor unions affiliated with these 56 unions. The affiliated local unions have been chosen because they are in areas where there have been large numbers of claims filed against the CCR defendants. Again, these mailings are intended to encourage union officials to use the materials provided by the settling parties to notify their members of the class action and proposed settlement.

Along this same line, a notification packet will be mailed to the more than 1,000 attorneys who have represented plaintiffs in lawsuits against one or more of the CCR defendants. Thus, in addition to asking each attorney for the names and addresses of potential class members, the cover letter will also ask each attorney to use the notification materials to help notify potential class members of the class action and proposed settlement.

To supplement these efforts to provide Rule 23 notice by publication to those whose names and addresses cannot otherwise be obtained, the notice plan provides for contacts with other organizations whose members may be in the class, trade, industrial, and legal publications, and various state and federal courts.[13]

The settling parties have drawn up a list of 40 trade or other organizations whose members may be in the class. The total membership of these organizations is in excess of 38.7 million. Just as with the unions and the plaintiffs' attorneys, a packet will be sent to these organizations, and they will be urged to use all reasonable means to notify their members or other potential class members about the class action and proposed settlement. Again, camera-ready materials will be available for immediate use in any publications distributed by the organization to its members.

The settling parties also prepared a list of 41 trade, industrial and legal publications whose readers include individuals who may have worked with or around asbestos or asbestos-containing products, or attorneys who routinely represent plaintiffs in asbestos personal injury litigation. The total circulation of these publications is approximately 4.5 million. Under the notice plan, a packet, including the camera-ready materials, will be sent to each publication. A cover letter will urge each publication to use these materials to publicize the class action and proposed settlement to its readers.

Finally, the notice plan provides for a complete set of notice materials and an appropriate cover letter to be sent to several hundred state and federal courts where claims have been filed against one or more of the CCR defendants. The cover letter will explain that these materials are being provided to the courts as a courtesy, and will ask the courts to help in the notification effort in any way that they can.

---

**13.** According to the settling parties, these efforts will also result in some additional individual notice in that those persons contacted may call the toll-free or class counsel and provide their name and address.

### b. Timing of the Notice Plan and the Opt–Out Period

The settling parties propose that the dissemination of notice be completed in eight weeks. Under the notice plan, mailings of individual notice packets to those persons who have filed claims since January 15, 1993, and to those whose names and addresses are ascertained from unions or plaintiffs' attorneys, will be completed (to the extent possible) within three to four weeks. Mailings of notification materials to unions, mass media outlets, trade or other organizations, trade, industrial and legal publications, and various state and federal courts will be completed in this same time period. The paid television advertising will run in weeks four and five, with the first round of paid print advertising appearing on the Sunday at the beginning of week five or six. The second round of paid print advertising will appear on the Sunday at the beginning of week seven or eight. The advertisement in *Parade* will also run in this same time period.

The mailing of individual notice packets to potential class members who call the toll-free telephone number, or to plaintiffs who file claims against the CCR defendants after July 31, 1993, will continue throughout the notification period. Given that the settling parties believe the dissemination plan will be completed within eight weeks, they propose an opt-out period of twelve weeks. This would allow class members *at least* four weeks after receipt of notice to decide whether or not to exclude themselves from the class.[14] The majority of class members, *i.e.*, those who receive notice in the beginning of the notice period, will obviously have more than four weeks to decide whether or not to opt out.

The settling parties will obtain a post office box in the name of the Clerk of the Court for receiving "Exclusion Requests" from class members. The box will be checked on a daily basis, and the parties will maintain a list and copies of all Exclusion Requests received. The settling parties also propose that, within a reasonable time after the close of the opt-out period, they file a sealed or unsealed report to the Court concerning implementation of the dissemination plan outlined above. They propose that the report contain a list of the names and addresses of all potential class members to whom individual notice packets were mailed.

### c. Whether the Notice Plan Satisfies Rule 23

As stated above, this class action was conditionally certified under Federal Rule of Civil Procedure 23(b)(3). Because the judgment in a class action maintained under this subdivision binds all members of the class unless they expressly opt out, Rule 23(c)(2) requires that the class members be informed of the existence of the action. In addition, when the named parties to a class action reach a proposed settlement, Rule 23(e) requires that the class members be notified of the terms of the proposed settlement. These requirements were designed to protect absent class members' due process rights. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As the Supreme Court as noted, the "right to be heard has little reality of worth unless one is informed that the matter is pending and can choose for [him/herself] whether to appear or default, acquiesce or contest." *Id.* at 314, 70 S.Ct. at 657.

Because the named parties in this class action filed the proposed settlement at the same time as the complaint, the notice materials proposed by the settling parties are designed to simultaneously inform class members of both the existence of the class action, pursuant to Rule 23(c)(2), and the substance of the proposed settlement, pursuant to Rule 23(e). Although such combined notices have been approved by the Third Circuit, *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824 (3d Cir.1973), they must satisfy the requirements of both Rules 23(c)(2) and 23(e). *See* 5 H. Newberg & A. Conte, Newberg on Class Actions § 8.21, at 8–67 (3d ed. 1992) (hereinafter "Newberg on Class Actions"). The requirements of Rule

---

14. The Exclusion Requests will be considered timely if they are postmarked before the expiration of the opt-out period.

23(c)(2) are stricter than the requirements of Rule 23(e) and arguably stricter than the due process clause. *See* 5 Newberg on Class Actions § 8.04, at 8–16; *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985). Thus, it is enough that the plan for dissemination of notice satisfies Rule 23(c)(2). Accordingly, this memorandum need only discuss the requirements of Rule 23(c)(2).

■ Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). However, "[t]he type of notice to which a member of a class is entitled depends upon the information available to the parties about that person" and the possible methods of identification. *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1098 (5th Cir.1977), explaining *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 534, 539 (N.D.Ga.1992). Where a potential class member's address is known or is available through reasonable efforts, individual or actual notice is required; constructive notice by publication in that circumstance would not satisfy the requirements of Rule 23(c)(2). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Nissan,* 552 F.2d at 1099. In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan,* 552 F.2d at 1099. For example, "[a] burdensome search through records that may prove not to contain any of the information sought" is not required. *Id.* Rule 23 does not require the parties to exhaust every *conceivable* method of identifying the individual class members. *See, e.g., Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir.1985). For those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause. *Mullane,* 339 U.S. at 317–18, 70 S.Ct. at 658–59. These class members will be bound by the final judgment in a class action despite the lack of individual notice.

After reviewing the case law, I find that the efforts in this case to identify absent class members are adequate to meet the individual notice requirements of Rule 23(c)(2). As the Manual for Complex Litigation recognizes, a reasonable notice plan is a function of anticipated results:

> Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution.... What efforts are reasonable under the circumstances of the case rests initially in the sound discretion of the judge before whom the case is pending.... [T]he fact that notice to some class members must be given by publication is not necessarily fatal. In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable.

Manual for Complex Litigation § 30.211, at 223; *see also In re "Agent Orange" Product Liability Litig.,* 818 F.2d 145, 168 (2d Cir. 1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988) ("Rule 23, of course accords considerable discretion to a district court in fashioning notice to a class."); *Berland v. Mack,* 48 F.R.D. 121, 129 (S.D.N.Y.1969) ("Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case.").

In this case, although the list of known class members is relatively short, the notice plan provides for very substantial efforts to determine the names and addresses of additional class members. As described in more detail above, these efforts include contacts with national and local labor unions and plaintiffs' lawyers, and an extensive campaign of paid and unpaid advertising. A long list of national and local unions and over 1,000 plaintiffs' attorneys will be contacted and asked to provide names and addresses of potential class members. If the unions prefer instead to mail notice on their own to their members, the CCR defendants will pay for such mailings. In addition, every element of the publication campaign—the mailings to unions, other organizations and publications, plaintiffs' attorneys, courts, and the

extensive paid and unpaid media advertising—has been designed to not only provide notice by itself but also to result in further individual notice. All persons identified through these efforts will be mailed a complete notice packet.

A comparison of the individual notice campaign proposed here with those approved in other similar class actions, *i.e.,* class actions involving claimants with no presently manifested disease ("future claimants"), shows that the efforts here are more than adequate to meet the requirements of Rule 23(c)(2).

In the *Johns–Manville* bankruptcy proceedings *no* efforts to give the future claimants individual notice were made at all. *In re Johns–Manville Corp.,* 68 B.R. 618, 626 (Bankr.S.D.N.Y.1986) (outlining notice campaign), *aff'd,* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp.,* 843 F.2d 636 (2d Cir.1988). Nonetheless, the court concluded that the notification campaign was fully adequate. *In re Johns–Manville,* 68 B.R. at 626.

In the *Manville Trust* limited fund class action, which followed the bankruptcy reorganization, very limited individual mail notice was directed at future claimants without manifested conditions. Instead, mail notice was sent only to known claimants or their counsel, co-defendants counsel, courts in which the Trust was involved as a party, judges who participated in asbestos coordinating committees, parties and co-defendant counsel in the Brooklyn Navy yard litigation, persons on Manville's service list from the underlying bankruptcy proceeding, the Property Damage Trust, certain court-appointed experts, and counsel for certain unions. *In re Joint E. & S. Dist. Asbestos Litig.,* 129 B.R. 710, 774–75 (E. & S.D.N.Y.1991), *vacated on other grounds,* 982 F.2d 721 (2d Cir. 1992), *modified on rehearing,* 993 F.2d 7 (2d Cir.1993). Thus, only minimal efforts were made to obtain the names and addresses of persons who had been exposed to Manville asbestos but who had not yet manifested any asbestos-related condition. Still, the notice was found "adequate to apprise potential class members, including ... possible future claimants, to the extent reasonably possible, of the pendency of the action." *Id.* at 801.

Also, in the *Agent Orange* litigation, the Rule 23(b)(3) opt-out class included all persons exposed to Agent Orange in Vietnam, regardless of whether they had manifested any physical injury related to that exposure. *In re "Agent Orange",* 818 F.2d at 154; *In re "Agent Orange" Prod. Liab. Litig.,* 996 F.2d 1425, 1429–30, 1433–35 (2d Cir.1993). The individual notice efforts in the *Agent Orange* litigation involved mailing written notice to persons who had already filed lawsuits in federal court (or whose state court actions were removed to federal court) and whose cases had been transferred to the Honorable Jack B. Weinstein, persons who had intervened or sought to do so, class members who had not yet filed suit or sought to intervene but were represented by counsel associated with the plaintiff's management committee, and all persons listed on the Veterans' Administration's "Agent Orange Registry." 818 F.2d at 155; *see also In re "Agent Orange" Prod. Liab. Litig.,* 100 F.R.D. 718, 729 (E.D.N.Y.1983). In addition, notice was sent to state governors for referral to any state agencies that might be able to provide the court with names and addresses of class members. 100 F.R.D. at 730–31. Lastly, media announcements included a toll-free telephone number to be called for further information. *Id.* at 730, 734, 735.

Thus, the efforts to identify unknown future claimants in the *Agent Orange* litigation were more limited than the efforts proposed here. Individual notice was given only to those persons already known to the plaintiffs' counsel in the case, those listed on the "Agent Orange Registry," any persons whose names were furnished by the state governors, and those who called the toll-free telephone number. No efforts, for example, were made to solicit veterans' groups to obtain further names and addresses. Nonetheless, the Second Circuit upheld the notice campaign, praising it as "a creative approach appropriate to this unique case." 818 F.2d at 167. This same notice was again upheld by the Second Circuit against a collateral attack. *Ivy,* 996 F.2d at 1435.

The individual notice campaign proposed in this case goes beyond that provided in those cases cited above. The notice plan proposed

by the settling parties will make substantial efforts to obtain the names and addresses of additional class members by contacting numerous unions and plaintiffs' lawyers, and by sending individual notice packets to all potential class members who call the publicized toll-free telephone number.

Contrary to the contention of the objectors, the Supreme Court's holding in *Eisen* does not mandate a different finding in this case. In *Eisen,* the plaintiff class consisted of over six million buyers and sellers of odd-lot securities. Some 2,225,000 of the class members could be identified by name and address from the computer records of various brokerage firms. The named plaintiff argued that Rule 23(c)(2) did not require individual notice to each identifiable class member, pointing out that the cost of such notice was prohibitively high and to require such notice would effectively end the case as a class action. The Supreme Court held that the mandate of Rule 23(c)(2) requiring individual notice to those persons who can be identified through reasonable effort is "unmistakable." *Id.* at 173, 94 S.Ct. at 2150. The Court observed that "[t]here is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs," *Id.* at 176, 94 S.Ct. at 2151, and stressed that "individual notice is not a discretionary consideration to be waived in a particular case." *Id.*

Relying on *Eisen,* several objectors argue that the settling parties must, at the very least, obtain lists of the names and addresses of (1) present and former employees of the CCR defendants and of their predecessors whose job it was to install, or to work around asbestos, (2) present and former employees of naval and commercial shipyards, and (3) present and former employees of major purchasers of asbestos or asbestos-containing products from the CCR defendants. Brief of the law firm of Baron & Budd ("Baron Brief") at 7–11. The objectors claim that the majority of the persons on these lists are members of the plaintiff class.[15] They also contend that the lists are obtainable through

reasonable effort, and thus, regardless of the cost, individual notice packets must be mailed to those persons.

After reading the memoranda of law and hearing extensive argument on exactly what lists are available and what such lists might contain, I conclude that the efforts suggested by the objectors would be unduly time-consuming and expensive, and not necessarily fruitful. First, to the extent that these lists are in the control of third parties, it is unlikely that the third parties would cooperate. Unlike unions—who because of their relationship with potential class members have an incentive to cooperate in the notification effort—former customers of the CCR defendants, former subsidiaries of the CCR defendants, and shipyards are unlikely to want to help notify their former employees of this class action because they may fear that such notice will increase the number of asbestos-related workers' compensation claims against them. Second, assuming such lists exist or could be generated, none of the lists would be current. The settling parties claim and the objectors do not dispute that such lists would contain pre–1980 addresses.

Third, the lists would be substantially overinclusive. Far fewer of those persons whose names would be generated are indeed members of the class. And, there would be no easy method of knowing which persons on these lists were likely to have been exposed to asbestos and which persons were not. *See In re Domestic Air,* 141 F.R.D. at 546 (court held that it was not necessary to send individual notice to all those on an overinclusive list when there were no data which would enable the parties to determine who on the list was a class member). In striking the balance between protecting the rights of absent class members and making Rule 23 workable, courts have held that it is not necessary to send individual notices to an overinclusive group of people simply because that group contains some additional class members whose identifies are unknown. *See, e.g., In re "Agent Orange" Product Liab. Litig.,* 818 F.2d at 169 (rejecting argument

---

**15.** The objectors cite nothing to suggest that their claim is based on anything other than pure conjecture.

that individual mail notice should have been provided to all 2.4 million Vietnam Veterans, because there were "far fewer than that number exposed to Agent Orange" and thus notice would have been "considerably overbroad"); *In re Domestic Air*, 141 F.R.D. at 539–46 (sending notice to larger group "would most likely confuse the recipients and encourage [responses] by non-class members"); *Skelton v. General Motors Corp.*, 1987 WL 6281, at *3 & n. 3, 1987 U.S.Dist.LEXIS 795, at *8 & n. 3 (N.D.Ill. Feb. 3, 1987) (rejecting overinclusive list because it "could mislead many thousands of ineligible [persons] into thinking they qualify to recover in this action" and would "generate considerable confusion and additional expense in administering the settlement.") Further, courts have refused to order identification efforts that would require "impractical and extended searches" or would be unduly time-consuming or expensive. *See Helfand v. New America Fund, Inc.*, 64 F.R.D. 86, 92–93 (E.D.Pa.1974) (quoting *Mullane*, 339 U.S. at 317, 70 S.Ct. at 658), *vacated on other grounds sub nom., Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975).

Thus, this case is different than *Eisen*. In *Eisen*, the 2,225,000 persons on the computer lists were known to be members of the plaintiff class. *See In re Domestic Air*, 141 F.R.D. at 546 (*Eisen* represents "classic case" for individual notice where "records kept by defendants indisputably contained the names and addresses of the universe of class members."). Although providing each person on the computer list with individual notice would have been expensive for the named plaintiff in *Eisen*, and therefore extremely burdensome, actually identifying those persons as class members was clearly possible through reasonable effort. As the court noted in *In re Nissan*, the word "reasonable" in the "reasonable effort" requirement of Rule 23(c)(2) could not be ignored. *In re Nissan*, 552 F.2d at 547. "In every case, reasonableness is a function of anticipated results, costs, and amount involved." *Id.* (citation omitted).

In this case, the methods suggested by the objectors would, after burdensome and expensive efforts, produce at best a list of names and outdated addresses that would represent only a fraction of the class, and that would include many names of non-class members. It would not be reasonable to mail individual notice packets to these persons, especially in light of the extensive, and probably more effective, notice plan proposed by the parties and described above.

The objectors also argue that the notice plan fails to provide a sufficient time in which notice to the class can be accomplished and in which class members can exercise their option to exclude themselves. The Supreme Court has held that both due process and Rule 23(c)(2) require that notice of a judicial proceeding affecting the rights of an absent party "afford a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. In this case, the settling parties have proposed that the dissemination of notice be completed in eight weeks with the opt-out period extending an extra four weeks beyond that. This would allow class members who last receive notice *at least* four weeks after receipt of notice to decide whether or not to exclude themselves from the class.

The objectors claim that the eight-week notice period is inadequate, and that the paid newspaper and television advertisements should continue for at least six months. The objectors give no real reasons in support of their argument, except to say that six months is better than two months. Again, notice need not be the best that it can be. It is enough that it satisfies Rule 23(c)(2) and the due process clause. I conclude that the eight-week notice period, given that it includes extensive efforts to both identify individual class members, provide individual notice, and provide notice by publication, is sufficient.

The objectors also claim that the opt-out period is too short. The objectors cite to *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 833–34 (3d Cir.1973), in support of their claim. In *Greenfield*, the class included holders of certain shares of stock, and the notice consisted of two small newspaper ads. After the appearance of the ads, the class members had only 30 days either to exclude themselves from the class or file a claim for

compensation. *Id.* at 830, 833. Class members who took neither step lost all rights to compensation. *Id.* at 828. In these circumstances, the Third Circuit found that the entire notice plan was inadequate, including the 30–day opt-out period, since brokerage firms would need longer than 30 days after seeing the newspaper ads to search their records and notify potential class members concerning their rights. *Id.* at 834.

The objectors argue that the unions will have to do what was expected of the brokerage firms in *Greenfield,* and, as in that case, the one-month opt-out period is too short. In this case, however, the total opt-out period is twelve weeks. The extra four-weeks at the end of the latest dissemination of notice is to ensure that all those notified will have *at least* one month to decide whether to exclude themselves from the class. Also, the publication campaign in this case is much more extensive than the inadequate notice given in *Greenfield.*

I find that *Greenfield* does not hold that all one-month opt-out periods are inadequate as a matter of law. And, after reading the memoranda of law and hearing argument on the timing of the notice plan and the period for opting out, I find that the eight-week notification plan and the twelve-week opt-out period are adequate in this case.

### d. Conclusion

As stated above, I conclude that the settling parties' plan for the dissemination of notice, including the timing, satisfies the requirements of Rule 23(c)(2), and therefore, the requirements of the due process clause. It is clear to me that the individual notice campaign and the notice by publication campaign together are designed to reach the maximum number of class members. However, because the class in this case is potentially very large, and the objectors numerous, I will order that the settling parties, at the end of the first four-week period, file a report with the Court which contains the fol-

lowing information: (1) the number of individuals actually notified, (2) the categories of individuals notified, and (3) a description of precisely what efforts the various "volunteer" organizations and persons [16] have made to notify potential class members. The Court, upon reviewing the mid-term report, may amend the notice plan if necessary to satisfy the requirements of Rule 23(c)(2).

As mentioned above, the settling parties also propose that, within a reasonable time after the close of the opt-out period, they file a report to the Court containing a list of the names and addresses of all potential class members to whom individual notice packets were mailed.[17] The requirement of a mid-term report does not relieve the settling parties of this responsibility. Moreover, I will order the settling parties to include in their final report the information requested above in the mid-term report.

### 2. Contents of the Notice

### a. Description of Notification Materials

■ The notification materials include the following items: (1) the full, Rule 23 notice (the "Notice"), (2) a document entitled "Questions and Answers on the Class Action Lawsuit and Proposed Settlement," (3) the print advertisement, (4) the "copy" for the television advertisement, (5) the camera-ready materials, (6) the lists of CCR defendants, asbestos-containing products and occupations of those potentially exposed to asbestos, (7) the press release and newscast script, (8) the script for the toll-free telephone number operator, (9) and the cover letters to various persons and organizations.

The most detailed notification document is the full Notice, which is a 27–page document.[18] This Notice is a combination notice under Rule 23(c) and Rule 23(e), which means that it gives class members notice of both the class action and the proposed settlement. Pursuant to Rule 23(c), the Notice notifies class members of the existence of the class action and explains the procedures for

---

16. The "volunteer" organizations include unions, plaintiffs' attorneys, other organizations whose members may be in the class, and trade, industrial, and legal publications.

17. Because the final report will contain the names and addresses of potential class members, I will order that it be *sealed.*

18. Exhibit A to the Joint Motion.

opting out of the class and the consequences of remaining in the class, and informs each class member who does not opt out of his or her right to enter an appearance in the class action through counsel. The Notice has a heading in bold letters which reads: "AT-TENTION: ALL PERSONS WHO HAVE WORKED WITH OR AROUND ASBES-TOS OR ASBESTOS–CONTAINING PRODUCTS, THEIR SPOUSES OR HOUSEHOLD MEMBERS, AND THE FAMILY MEMBERS OR LEGAL REPRE-SENTATIVES OF SUCH INDIVIDUALS."

The Notice also includes an "Exclusion Request Form" which class members who wish to opt out must complete and return to the Court. Pursuant to Rule 23(e), the Notice also summarizes the terms of the proposed settlement (both briefly in the body of the Notice and in greater detail in a 14–page Appendix), tells class members how to obtain a full copy of the settlement agreement, and explains how class members may review additional materials relevant to the class action and proposed settlement.

Along with the full Notice, those class members who can be identified through the efforts described above will also be mailed a document entitled "Questions and Answers on the Class Action Lawsuit and Proposed Settlement." [19] This document is essentially an explanation of the main points of the Notice in a question-and-answer format. It takes important blocks of information concerning the class action and settlement and breaks them down into smaller units that can be more easily understood.

The print advertisement will run as a one-half page ad in most newspapers and a one full-page ad in tabloid-style newspapers and in *Parade* magazine.[20] The ad gives basic information about the class action, the proposed settlement, the procedures for opting out and the consequences of remaining in the class, and the right to enter an appearance through counsel. The ad has a headline, directed in bold letters to "ALL PERSONS

WHO HAVE WORKED WITH OR AROUND ASBESTOS OR ASBESTOS–CONTAINING PRODUCTS, THEIR SPOUSES, HOUSEHOLD AND FAMILY MEMBERS AND LEGAL REPRESENTA-TIVES." [21] A list of asbestos-containing products and occupations where exposure to these products potentially occurred is also included in the ad. The ad urges any potential class members with questions to call the special toll-free telephone number or to contact class counsel to obtain a complete individual notice packet.

The 30–second television notice is designed to catch the attention of potential class members, to alert them to the existence of the class action, to encourage them to look in their newspapers for the more thorough print advertisement and call the toll-free telephone number if they wish to receive a complete individual notice packet.[22] The ad will have both spoken text and a rolling text on the screen, and will read as follows:

Attention

A class action lawsuit involving individuals occupationally exposed to asbestos is pending in federal court.

If you're a class member, your rights may be affected by this lawsuit and a proposed settlement.

Class members are:

* all persons exposed occupationally to asbestos;

* individuals exposed through the occupational exposure of a spouse or household member;

* family or legal representative of those exposed

For information, see your Sunday paper, or call 1–800–xxx–xxxx (repeat number).

The camera-ready materials are small announcements which are designed to be used in publications such as those distributed by many state and local unions and labor bodies

**19.** Exhibit B to the Joint Motion.

**20.** Exhibit C to the Joint Motion.

**21.** Due to the size of *Parade* magazine, the headline of the advertisement will be slightly smaller

than shown in Exhibit C to the Joint Motion, but the text of the ad in *Parade* will be the same.

**22.** Exhibit C to the Joint Motion.

that will not accept paid advertising.[23] As with the television notice, the camera-ready materials encourage the readers to look in their newspapers for the more detailed print advertisement and call the toll-free telephone number if they wish to receive a complete individual notice packet.[24]

The lists of the CCR defendants, the asbestos-containing products and the occupations of those persons who were potentially exposed to asbestos or asbestos-containing products will be included in the notification materials sent to unions and similar trade or other organizations.[25] These lists will also be included in the full Notice and the print advertisement to further clarify the scope of the class.

The press release and newscast script give basic information concerning the class action and settlement.[26] They are designed to be distributed as public service information to newspapers, wire services, and television and radio outlets in numerous media markets.

The notification materials also include a script to be followed by the telephone operator when answering calls placed to the toll-free number which all the notification materials urge potential class members to call to obtain a complete individual notice packet.[27] The script is designed to ensure that erroneous information concerning the class action and settlement will not be disseminated by the toll-free operators. Pre-stuffed individual notice packets will be labeled so that the correct materials (the Notice or the Stipulation of Settlement itself or both) are mailed to potential class members who call the toll-free telephone number.

Finally, the notification materials include cover letters to be sent to potential class members, plaintiffs' attorneys, unions and labor bodies, trade and other organizations, trade, industrial, and legal publications, media outlets, and state and federal courts.[28] These letters inform the reader of the existence of the class action, including a description of the class, and urge them to help in the notification efforts.

### b. Whether the Notice Materials Satisfy Rule 23(c)(2) and Rule 23(e)

The requirements for the contents of the notice to be provided to absent class members to inform them of the lawsuit and the proposed settlement are set forth in Rules 23(c)(2) and (e). Again, because the named parties in this class action filed the proposed settlement at the same time as the complaint, the notice materials are designed to simultaneously inform class members of both the existence of the class action, pursuant to Rule 23(c)(2), and the substance of the proposed settlement, pursuant to Rule 23(e). However, as stated above, the notice must satisfy the content requirements of both rules.

---

**23.** Exhibit E to the Joint Motion.

**24.** The camera-ready announcements read as follows:

> ATTENTION
> ALL PERSONS WHO HAVE WORKED WITH OR AROUND ASBESTOS OR ASBESTOS-CONTAINING PRODUCTS
> A proposed class action settlement involving individuals who were exposed occupationally, or through the occupational exposure of a spouse or household member, to asbestos or asbestos-containing products is now pending in the United States District Court in Philadelphia. Family members or legal representatives of exposed persons are also class members.
> If you, or a spouse or household member worked with or around asbestos or asbestos-containing products, you may be a class member, and your rights may be affected by this class action and proposed settlement.

> If you are a class member, you may exclude yourself from the class. If you are a class member and you do not exclude yourself from the class, you have the right to participate in the class action through counsel, and you will be bound by the results of the class action and settlement.
> For further information about the class action and proposed settlement, and the procedures for exclusion from the class, see your local Sunday newspaper or weekly, or call 1–800–xxx–xxxx or Class Counsel 1–800–666–7503

**25.** Exhibit F to the Joint Motion.

**26.** Exhibit G to the Joint Motion.

**27.** Exhibit H to the Joint Motion.

**28.** Exhibits I, J, K, L, M, N and P to the Joint Motion.

Rule 23(c)(2) requires that the notice "advise each member that (a) the court will exclude the member from the class if the member so requires by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who does not request exclusion may, if the member desires, enter an appearance through counsel." Courts have also held that "the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan,* 552 F.2d at 1105.

■ Rule 23(e) simply states that "notice of the proposed … compromise shall be given to all members of the class in such manner as the court directs." Thus, the Third Circuit has observed that Rule 23(e) "commits the form of the notice to the court's discretion." *Zimmer Paper Prods.,* 758 F.2d at 90. The court should, however, ensure that the notice "apprise[ ] prospective [class] members of the terms of the Proposed Settlement, the identity of persons entitled to participate in it[,] and the options that are open to the [class] members in connection with the proceedings." *In re Drexel Burnham Lambert Group, Inc.,* 130 B.R. 910, 924 (S.D.N.Y.1991), *aff'd,* 960 F.2d 285 (2d Cir. 1992). In other words, the notice should contain enough information about the settlement to enable class members to make an informed choice. *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 223 (5th Cir.1981). Also, the description of the proposed settlement must be "neutral," *In re Nissan,* 552 F.2d at 1105, and amenable to "lay comprehension." *Kyriazi v. Western Electric Co.,* 647 F.2d 388, 395 (3d Cir.1981).

■ Items to be considered for inclusion in the Rule 23(e) notice are (1) a description of the class, (2) a statement of the purpose, time, and place for the settlement hearing, (3) a description of the case, including the contentions of the complaint and a summary of the proceedings before settlement, (4) a description of the proposed settlement, (5) an explanation that attorneys' fees will be

sought by class counsel, and (6) a description of the procedure for filing objections to the settlement, for obtaining documents, and for making a claim against the settlement fund. 2 Newberg on Class Actions § 8.32, at 8–105. There is no requirement that the entire proposed settlement be sent to the class members.

The full Notice and the Questions and Answers satisfy the express requirements of Rule 23(c)(2). Each explains (1) that every class member has the right to exclude her/himself from the class if s/he files an exclusion request by a certain date, (2) that any judgement or settlement of the class action will bind class members who do not request exclusion, and (3) that any class member who does not request exclusion may, if s/he desires, enter an appearance in the class action through counsel. In addition, a simple, one-page "Exclusion Request Form" is attached to the full Notice. Any class member who wishes to exclude her/himself from the class may do so simply by returning this form to the Post Office Box to be maintained by the settling parties in the name of the Court Clerk.

With respect to the notice of the proposed settlement under Rule 23(e), the full Notice contains both a short summary of the proposed settlement in the body of the Notice and a more extensive summary in an Appendix to the Notice. The primary features of the settlement are also summarized in the Questions and Answers document. In addition, both the full Notice and the Questions and Answers inform class members that they may obtain a complete copy of the entire Stipulation of Settlement by telephoning the toll-free number. Thus, any class member may review the entire settlement agreement in detail. The full Notice also contains all six items suggested by Professor Newberg in the passage cited above. Thus I find that the individual notification documents "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class," and thus meet the requirements of Rule 23(c)(2) and (e). *In re Nissan,* 552 F.2d at 1105.

The abbreviated versions of the notice for use in written publications and in the broadcast media are likewise adequate for their purposes. Each written advertisement (the newspaper advertisement, the camera-ready materials, and the press release) contains the three items, noted above, that are required by Rule 23(c). In addition, each written ad contains both a short summary of the proposed settlement and the toll-free number that class members may call to obtain the full notice packet.

The broadcast advertisements (the television ad and the newscast script) are similarly adequate. Neither contains the amount of information contained in the print advertising; however, each serves its goal of alerting potential class members concerning the class action and settlement, and urges class members to call the toll-free number to obtain the complete individual notice materials.

A comparison with notices approved in other cases shows that the contents of the notification materials proposed here are properly designed. The full Notice is comparable to those reprinted in the Manual for Complex Litigation § 41.41–43, at 393–97, 400–05, 408–12, and in the Appendix to 5 Newberg on Class Actions. The full Notice is also comparable to the Rule 23(c) and (2) notices used in the *Agent Orange* litigation. *In re "Agent Orange"*, 100 F.R.D. at 731–34 (Rule 23(c) notice), *aff'd*, 818 F.2d 145 (2d Cir.1987); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. 740, 867–74 (E.D.N.Y.1984) (Rule 23(e) notice). The abbreviated notices for print and broadcast are comparable to those reprinted in the Manual for Complex Litigation § 41.41, at 398, in the Appendix to 5 Newberg on Class Actions, and to those used in the *Agent Orange* litigation, 100 F.R.D. at 734–35, 597 F.Supp. at 874–75.

In sum, I have reviewed the contents of the entire set of notification materials described above, and I believe that these materials satisfy the requirements of Rules 23(c)(2) and (e) and the due process clause of the Constitution. However, taking into consideration the comments and suggestions of

the objectors and the *amicus curiae*, I also believe that some of the notice materials can more clearly alert the reader that they may be a member of the class whether or not they are currently suffering from an asbestos-related condition. This class action, although not the first of its kind, is somewhat unusual in that it involves an asbestos personal injury class that includes as members persons who have not yet been diagnosed with an asbestos-related injury. Because I believe that it is extremely important that these persons be alerted to their potential membership in the class, I will order that some clarifying language be added or made more prominent in some of the notice materials.

The notice materials define the scope of the class in some detail. They specifically explain that the class does not include "environmental exposure," such as any possible exposure by office workers in buildings where asbestos products were present. To make this still clearer, the full Notice and the print advertisement contain a list of asbestos-containing products and a list of occupations where exposure potentially occurred. Some of the notice materials also notify readers that they may be members of the class "whether or not [they] are presently suffering from an asbestos-related medical condition." This information appears on page three of the full Notice. Again, this information is important to alert those who might not otherwise believe that they are members of the class. Thus, I will order that this information be mentioned in the "ATTENTION" line on page one of the full Notice. For the same reason, I will order that this information be mentioned in the larger print sections of the print advertisement attached as Exhibit C to the Joint Motion. Finally, I will order that this information be added to the camera-ready materials and the 30–second television ad.[29]

In sum, I find that the contents of the notice satisfy the requirements of Rules 23(c)(2) and (e) and the due process clause of the Constitution, and that, after the minor changes discussed above, all of the proposed

---

**29.** Due to the limitations of these media, the information can be presented in a much more abbreviated form.

notice materials may be used to provide Rule 23 notice to the class.[30]

### 3. General Objections to the Plan and Contents

In opposing the notice plan and the contents of the notice materials broadly, the objectors contend that, regardless of the content of the plan, it cannot satisfy the requirements of Rule 23(c)(2) or due process. The objectors raise essentially three arguments. First, they contend that the preliminary certification order provides inadequate information to class members as to whether they are in the class and that this deficiency cannot be cured by the notice without amending the class definition. In addition, objectors suggest that even with the additional occupational information provided in the notice, persons who worked in those occupations may be unaware or may have forgotten their asbestos exposure and consequently will not know that they are in the class. Second, objectors contend that the case law provides that "future claimants, who do not yet manifest physical injury, cannot as a matter of due process be provided adequate notice". Finally, objectors argue that even if absent class members are able to determine whether they are class members, notice is inadequate because class members are compelled to decide whether to remain in the class or opt out at a time when they do not yet know the extent of their injuries.

■ The objectors first argument has two parts. Initially, the objectors contend that the description of the class in the notice differs from the class definition in the preliminary certification order of January 29, 1993. The objectors contend that the notice is therefore inadequate unless the certification order is amended. The objectors are incorrect in asserting, however, that the additional information included in the notice, identifying specific asbestos-containing products, further describing what constitutes "occupational exposure," and listing relevant occupations, is inconsistent with the definition of the class as preliminarily certified. The objectors themselves have not identified any inconsistencies.

■ In any event, it is the certification order, and not the notice, that determines the res judicata effect of the judgment that will be entered in this case. Thus, any modifications in the class definition that may be called for can be made at the time the final certification order is entered, that is, after and if the settlement is approved. It is appropriate to modify the class definition at that time if, during the course of the proceedings, the scope of the class has changed. See, e.g., Montelongo v. Meese, 803 F.2d 1341, 1352 (5th Cir.1986) (approving post-trial modification of class definition pursuant to court's "broad authority to redefine the class 'as appropriate in response to the progression of the case ...' ") (quoting Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983)), cert. denied, 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987).

As a second prong of this argument, the objectors suggest that even if the notice and certification order were congruent, the notice inadequately advises potential class members of their rights because people may not be aware of asbestos exposure in their jobs, or "may have forgotten" their exposure. Baron Brief at 18. I am satisfied, however, that after more than 20 years of extensive litigation, over 15 bankruptcies (many with extensive notice), and massive publicity about asbestos, persons who have had occupational exposure to asbestos are aware of that exposure. There is no reason to believe, as objectors assert without support, that the notice does not provide a sufficient explanation of the scope of the class such that persons who may be in the class would be unable to determine their status.

In short, the notice provides an adequate definition of the class, and that definition is consistent with the preliminary certification order. Any modifications in the class definition, if warranted, can potentially be made at the conclusion of the proceedings. And, giv-

---

30. In reviewing the adequacy of the notice materials, I have not addressed all of the arguments made by the various objectors. I am aware that the settling parties have agreed with several of the suggestions offered by the objectors and have amended the notice materials accordingly. After having heard extensive oral argument on this issue, as I have on all others in this case, I find that the remaining objections to the notice materials are unpersuasive.

en this adequate description of the class in the notice, potential class members will be able to ascertain whether they are in the class.

The objectors argue that persons who have been exposed to asbestos, but who have no presently manifested asbestos-related condition, cannot be provided with effective notice. The objectors contend that such persons "could not reasonably believe that they have any 'rights' to give up," and that they will simply treat the notice as "junk mail." Baron Brief at 19. In essence, the objectors argue that adequate notice can never be given to persons without manifested injuries, citing *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3d Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

*Schweitzer*, however, does not so hold. The issue in *Schweitzer* was whether plaintiffs' asbestos personal injury claims were discharged in bankruptcy where the plaintiffs had no manifest injury at the time of the bankruptcy. The court held that these claims were not discharged as a matter of statutory bankruptcy law since these persons had no cause of action under the Federal Employer's Liability Act at that time. *Id.* at 942–43. While the court expressed certain reservations about due process, were it to have concluded that the claims were discharged, those concerns do not apply here. First, unlike the notice proposed here, the notice given in *Schweitzer* was not directed to "future" asbestos claimants and, even if received, did not include any information notifying such claimants that their rights were affected by the proceeding. Second, the Conrail reorganization plan at issue in *Schweitzer* made no provision for the compensation of such claimants. Accordingly, had the court held the claims discharged, all of the personal injury claimants would have been denied compensation entirely, with no prior notice.

Thus, while the court in *Schweitzer* stated that plaintiffs there could not reasonably have been expected to file claims against Conrail before their injuries became manifested, it did so in the context of those facts. Such facts are not comparable to the situation here, where notice will be specifically directed to "future" claimants and will inform them that they are included in the class, and where the settlement at issue will provide compensation for qualifying claimants who develop asbestos-related conditions in the future.

While *Schweitzer* is inapposite, other cases support the constitutionality of the proposed notice plan.[31] These cases have approved notice to classes including persons with unmanifested injuries. The objectors argue that these cases are not persuasive authority because all but one—the *Agent Orange* case—arose out of bankruptcies, or because they involved exposures to products that were less likely to be unknown or forgotten by the exposed persons. Such attempts to distinguish this line of cases, however, must fail.

The cases cited, except for *Agent Orange*, did arise in the bankruptcy context. Nevertheless, in all of these cases, the rights of "future" claimants were being adjudicated, and due process therefore required that notice be given to advise the "future" claimants of their rights to appear and participate in proceedings. Since these bankruptcy proceedings would significantly impact the remedies of "future" claimants against the debtor companies, notice in these cases is just as important—if not more important—than the notice in an opt-out class such as this one, where all claimants, whether they opt out or not, will be provided with a significant remedy against the CCR defendants.

The objectors further argue that even the Agent Orange decisions, *In re "Agent Orange"*, 100 F.R.D. at 718, *aff'd*, 818 F.2d 145 (2d Cir.1987); 996 F.2d at 1425, which concededly involved a non-bankruptcy Rule 23(b)(3) class action, should be disregarded as precedent. According to the objectors, the Second Circuit in the *Ivy* decision misinterpreted the requirements of the due pro-

---

**31.** *See In re "Agent Orange"*, 100 F.R.D. at 728–29, *aff'd*, 818 F.2d at 167–69; *In re "Agent Orange"*, 996 F.2d at 1435; *In re Johns–Manville Corp.*, 78 B.R. at 408–09; *In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. at 834–37; *Unarco Bloomington Factory Workers v. UNR Industries, Inc.*, 124 B.R. 268, 271–72, 283 (N.D.Ill.1990).

cess clause by holding that, given able representation of absent class members, adequate notice to such class members is unnecessary. 996 F.2d at 1435. Such a reading of the case is wrong. The Second Circuit in *Ivy* referred to its earlier holding that the notice plan was adequate and stated that "[its] view ha[d] not changed." *Id.* Noting that due process "is a flexible concept," the Second Circuit concluded that, upon balancing the relevant factors, including "society's interest in the efficient and fair resolution of large-scale litigation," the fairness of the settlement, and the adequacy of class counsel, all due process requirements were satisfied. *Id.*

Thus, the Second Circuit in *Ivy* did not dispense with notice requirements, as it could not have done. Rather, it simply held that other factors may enter into the due process calculus, and that, given the circumstances present there, the notice given was adequate. This holding is consistent with Supreme Court precedent. See *Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657 (due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... [I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.").

In sum, there is ample support for the constitutionality of the proposed notice plan in this case. These cases all approved notice campaigns directed to "future" claimants. *Schweitzer* is not to the contrary. Consequently, the objectors' argument that notice cannot be provided as a matter of constitutional law is without foundation.

The objectors finally argue that it is unfair to require persons without presently manifested injuries to choose between remaining in the tort system and participating in the proposed class settlement. They thus contend that, even assuming the receipt of notice about their options, class members who have not yet manifested an asbestos-related condition do not possess sufficient information to make an informed decision whether to opt out.

In this case, however, class members are not forced by this settlement to make any change in their existing situation at all. Rather, if a class member who has no presently-manifested injury wishes to maintain the *status quo*, he or she may do so simply by opting out. What the settlement offers to such claimants is simply an option to choose a different compensation system in the event that they become ill. This is not a case where class members are forced to choose between various options or fear losing their rights altogether. In short, the class members are not forced into an premature decision.

I find therefore, that the objectors arguments that notice to the members of the class can never satisfy the requirements of Rule 23 and the due process clause are without merit.

## III. CONCLUSION

I conclude that the proposed settlement is fair for the preliminary purpose of sending notice to the class. Also, I conclude that the extensive plan for dissemination of notice designed by the settling parties, and the contents of the notice materials satisfy the requirements of Rules 23(c)(2) and (2) and the due process clause of the Constitution.

Accordingly, the schedule for the dissemination of the notice and the final fairness hearings will be as follows: the plan for dissemination of notice will be implemented starting on November 1, 1993 and ending on December 27, 1993, the mid-term report will be due on December 6, 1993 (one week after the end the first four-week period), the deadline for opting out of the class will be January 24, 1994, the final report will be due on February 16, 1994, and the final fairness hearing will begin at 9:30 a.m. on February 22, 1994, and continue from day to day until completed.