AMERICAN TITLE & TRUST CO. v. GULF REFINING CO. et al.

No. 243.

Circuit Court of Appeals, Second Circuit.

July 16, 1934.

Scudder, McCoun, Stockton & Kerfoot, of New York City (Branch Kerfoot, of New York City, and George S. Hobart and Duane E. Minard, both of Newark, N. J., of counsel), for plaintiff-appellant.

Cravath, DeGersdorff, Swaine & Wood, of New York City (Bruce Bromley and Albert R. Connelly, both of New York City, of counsel), for defendants-appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal is from a judgment for the defendants in an action of ejectment. The plaintiff claims to have derived title to a certain part of the foreshore of Staten Island through a grant made in 1708 by Queen Anne to Lancaster Symes, a major in the Colonial Army. The title claimed by the plaintiff is an undivided $87/100$ interest.

The defendants Corbin Land Company and Gulf Refining Company contend that the lands in question, which lie between high and low water mark, were not included in the Symes grant but remained in the crown, passed to the state of New York at the time of the Revolution, and from it, in 1930, by letters patent to Corbin Land Company under whose title, through a lease by the latter, Gulf Refining Company came into possession.

The Symes letters patent, after reciting that Symes had presented to Lord Cornbury, Governor of the Province of New York, his petition praying for a grant of all the "Peices & Parcells of Vacant and unappropriated Land and Meadow on Staten Island in the County of Richmond" granted unto "Lancaster Symes his Heirs and Assignes all the beforemenconed Peices and Parcells of Vacant & Unappropriated Land and Premises and all and Singular the Hereditaments & Appurtenences thereunto belonging within the bounds and limitts above in these Presents menconed and Expressed together with all and Singular the woods Underwoods Trees Timber ffedings Meadows Marshes Swamps Pooles Ponds Waters Watercourses Rivers Rivoletts Runns & Streams of Water Brooks ffishing and ffowling hunting hawking Mines & Mineralls Standing Growing Lyeing or being or to be had used or enjoyed within the Bounds and Limitts aforesaid and all other Proffitts Benefitts Advantages Hereditaments and appurtenances whatsoever unto the sd Peices and Parcells of Land and Premises belonging or in any wise Appurteyning (Except and always Reserved out of this our Present Grant all Gold and Silver Mines) To have & to Hold the said Peices & Parcells of Land & Premises with their Appurtenances hereby granted or meant menconed or intended to be hereby Granted as aforesd (Except before Excepted) unto the said Lancaster Symes his Heirs and Assigns forever. * * * *"

The trial court held that the grant to Symes did not cover any part of the foreshore of Staten Island and accordingly that the plaintiff had no title to the undivided interest which it claimed.

The complaint sought recovery in ejectment of two parcels which it described by metes and bounds and as "now or formerly between the high and low water lines of Arthur Kill or Staten Island Sound, situate lying and being on Staten Island." It was conceded at the trial that the stretch of land involved was "between high and low water mark" (fol. 231).

The plaintiff contends that the words of the Symes' patent which conveyed "all * * * Vacant and unappropriated Land and Meadow on Staten Island" embraced everything belonging to the crown that had not been disposed of under earlier grants. But a long line of authorities indicates that these words were insufficient to transfer the foreshore to Symes. As early as the decision in Cortelyou v. Van Brundt, 2 Johns. (N. Y.) 357, 362, 3 Am. Dec. 439, a patent described land as "stretching along the bay," and the court said that "the rule of the common law carries it down to ordinary high-water mark." In Canal Commissioners v. People, 5 Wend. (N. Y.) 423, 443, Chancellor Walworth remarked that "In England * * * a grant of land bounded upon the sea shore, or upon a stream or arm of the sea where the tide ebbs and flows, conveys to the grantee only that part of the bank which is not covered by the water at flood tide," and added that "this principle of the common law has not only been adopted in this state, but in nearly every other state in the union, where the question has been agitated." In Mayor, etc., of the City of New York v. Hart, 95 N. Y. 443, a colonial grant to the inhabitants of Harlem of a tract extending "Eastward to the end of the Ryver, or any parte of the said Ryver on which this island doth abutt" was

250

held only to convey crown lands up to high-water mark. In Sage v. City of New York, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592, the New York Court of Appeals again ruled to the same effect. The statement in Matter of Mayor, etc., of New York, 182 N. Y. at page 365, 75 N. E. 156, and the decision in Tiffany v. Town of Oyster Bay, 209 N. Y. 1, 9, 102 N. E. 585, are to the same effect.

■ While the plaintiff admits that, if the premises in the Symes grant had been described as bounded "by the shore," or "by or upon the water," or as "extending to the shore," the deed would not have covered the foreshore, it insists that the words "on Staten Island" are sufficient to include any land appurtenant to the upland which in a geological sense may be regarded as a part of the island. Such a contention seems to us directly in the face of the decision of the Court of Appeals in De Lancey v. Piepgras, 138 N. Y. 26, 33 N. E. 822. In that case the grant relied on as a source of title was made to Thomas Pell having, as lord of the manor, judicial and administrative functions, and in terms was of a whole island. Yet the court held that it did not cover the foreshore. In the light of that decision there can be nothing in the claim that a grant of lands "on Staten Island" included everything geologically a part of it. Indeed the contention might as well be pushed farther and the claim made that in a geological sense land of Staten Island beneath low-water mark is part of and hence equally with land between high and low water mark "on" the island. Certainly the grant of a whole island is as inclusive as one of land "on" the island. The offer to prove that land between high and low water mark was geologically "on" the island was properly rejected for, under accepted canons of construction, the grant was free from ambiguity and the judicial, rather than the scientific, meaning of the words "on Staten Island" was the matter for consideration. A governmental grant of lands between high and low water mark should not rest on mere implication but appear in plain words.

Moreover this very patent was considered by the New York courts in Matter of the City of New York (Staten Island Proceeding) 116 Misc. 179, 189 N. Y. S. 839, and was held not to include lands between high and low water mark. Affirmed in 209 App. Div. 828, 204 N. Y. S. 898, and 240 N. Y. 565, 148 N. E. 707.

■ The fact that prior grants were made by the crown of lands on Staten Island, which in some instances included the foreshore and in others specifically excluded it, does not suggest to us that the Symes patent, which contained none of these provisions, was ambiguous, and needed extrinsic evidence to construe it. Nor did the words conveying "Meadows Marshes Swamps Pooles Waters Watercourses," particularly when preceded by the clause "within the bounds and limits above," extend the grant beyond the island itself. They all related to meadows and waters within its confines taken at high-water mark.

The claim that the decision in Crown Lands Corporation v. Corbin Land Co., 204 App. Div. 895, 197 N. Y. S. 907, helps plaintiff's case is without foundation. If it should be regarded as favorable, it would be overborne by the later decision in Matter of the City of New York, 116 Misc. 179, 189 N. Y. S. 839, affirmed by the Court of Appeals in 240 N. Y. 565, 148 N. E. 707. But in Crown Lands Corporation v. Corbin Land Co. the court dealt with lands under water within the confines of the island, and not with the foreshore.

■ Though we cannot see that it is important to the result of this appeal whether we follow the New York decisions or gather our precedents at large, there would seem to be no doubt that in such a local matter as this we ought to follow state doctrines. Port of Seattle v. Oregon & W. R. R., 255 U. S. 56, 63, 41 S. Ct. 237, 65 L. Ed. 500; Shively v. Bowlby, 152 U. S. 1, 40, 14 S. Ct. 548, 38 L. Ed. 331. The contention that Appleby v. City of New York, 271 U. S. 364, 46 S. Ct. 569, 70 L. Ed. 992, precludes this is without foundation. That decision merely held that, where it is claimed that a state has impaired the obligation of contracts, the Supreme Court must decide for itself what was the law of the state at the time the contract was entered into, for otherwise the enforcement of a constitutional right would not be in the hands of the Supreme Court, but of the courts of the states.

No question of constitutional law is involved in the case at bar, and under such circumstances it is said in Appleby v. City of New York, 271 U. S. 364, 46 S. Ct. 569, 70 L. Ed. 992, that the local law should be applied.

We hold that the Symes' grant was free from ambiguity and needed no extrinsic evidence to interpret it, and that under settled canons of interpretation it did not cover the foreshore.

■ The only remaining question is whether the item of $617.25 allowed to appellees for disbursements in obtaining copies of documents for use on the trial should have been taxed. It is true that the copies were not actually used, but they would have been used if extrinsic evidence of conveyances of other lands on Staten Island had been admitted and the defendants had been compelled to go into their case on the merits. Appellant claims in substance that the appellees should have foreseen the dismissal of the complaint at the close of the plaintiff's case and that the preparation of the defense was therefore unnecessary. This contention we regard as unfounded.

Rev. St. § 983 (28 USCA § 830) provides that "lawful fees for exemplifications and copies of papers necessarily obtained for use on trials in cases where by law costs are recoverable in favor of the prevailing party, shall be taxed."

■ The remarks of the Supreme Court in Ex parte Peterson, 253 U. S. at page 316, 40 S. Ct. 543, 64 L. Ed. 919, and of the Circuit Court of Appeals of the Sixth Circuit in Scatcherd v. Love, 166 F. 53, 55, indicate that local practice should be followed in taxing costs in common-law actions. Section 1518 of the New York Civil Practice Act allows inclusion in a bill of costs of: "4. The legal fees paid for a certified copy of a deposition, or other paper, recorded or filed in any public office, necessarily used or obtained for use on the trial."

■ We think that the language of R. S. § 983 (28 USCA § 830), allowing "lawful fees for exemplifications and copies of papers necessarily obtained for use on trials in cases where by law costs are recoverable in favor of the prevailing party," is broad enough to cover copies necessarily used for preparation of a defense even though not introduced in evidence. Judge Wade allowed such expenditures in Bone v. Walsh Const. Co. (D. C.) 235 F. 901, and in a patent suit we recently approved the allowance by the District Court of disbursements for simplified drawings for use in making more clear the patent drawings themselves. Appliance Inv. Co. v. Western Electric Co. (C. C. A.) 61 F.(2d) 752, 756.

Counsel for plaintiff rely upon Wooster v. Handy (C. C.) 23 F. 49, but that decision may have rested upon the fact that it was there sought to tax papers used only on interlocutory motions or hearings. Judge Lacombe in Ryan v. Gould (C. C.) 32 F. 754, refused to allow certified copies of papers procured by the defendant to enable him properly to present his defense. These somewhat technical rulings ought not, in our opinion, to prevent the taxation of copies necessarily obtained for use in the defense of this action merely because it turned out to be sufficient to rest on the plaintiff's proof.

We think that the court below did not abuse its discretion in allowing taxation of the above item.

Judgment affirmed.