Dolores Marie **MEADOWS**, Plaintiff,

v.

**FORD MOTOR COMPANY and International Union, United Automobile Aerospace and Agricultural Implement Workers of America, Local 862, Defendants.**

**Civ. A. No. 7005.**

United States District Court,
W. D. Kentucky,
Louisville Division.

Jan. 16, 1973.

Supplemental Opinion Aug. 22, 1973.

James C. Hickey, Ewen, MacKenzie & Peden, Thomas L. Hogan, Louisville, Ky., for plaintiff.

Arthur W. Grafton, Edgar A. Zingman, Jon L. Fleischaker, Wyatt, Grafton & Sloss, Herbert L. Segal, Segal, Isenberg, Sales, Stewart, Louisville, Ky., for defendants.

ALLEN, District Judge.

Plaintiff, Dolores Marie Meadows, suing on behalf of herself and other women similarly situated, the scope of whose class has previously been fixed by this Court, has filed a renewed motion for summary judgment on liability.

The Court had previously overruled a motion for summary judgment filed by plaintiff, but has proceeded to re-examine the pending motion because of new authorities presented to it by the plaintiff.

It appears from the evidence that 54 women have applied for employment on the production line of the Kentucky Trunk Plant since plaintiff filed her application on October 10, 1969. None of these applicants have been employed, and it is admitted by defendant Ford that it has hired 935 production workers between October, 1969 and October, 1971. It is admitted also by Ford that it maintains an employment policy which requires a minimum weight of 150 pounds. An exhibit attached by plaintiff to her memorandum establishes that 80 per cent of all females from 18 to 24 years of age in the population of the United States cannot meet the 150 pound requirement, while 70 per cent of the men in this age bracket do meet that requirement.

It is further established by the deposition of Dr. Charles E. Allen, Ford's physician, that Ford has made exceptions to its minimum 150 pound requirement for men who weighed between 135 and 150 pounds but has made no exceptions for women. It is also established from Dr. Allen's deposition that neither the company nor he has made any studies or tests to determine the strength of people weighing over 150 pounds as contrasted with those who weigh 150 pounds. Dr. Allen admits that at no time, although he is the person who is designated by the Company to make physical examinations of all persons seeking employment on Ford's production line, has he been asked to perform a physical examination on a woman seeking such a job.

In the case of Rosenfeld v. Southern Pacific Company, 444 F.2d 1219 (9th Cir. 1971), summary judgment was rendered by the district court for the plain-

tiff woman employee bringing suit under Title 7, the Civil Rights Act of 1964. The specific position involved was that of an agent-telegrapher and the work requirements which that position entailed could involve as much as 10 hours a day and 80 hours a week. The position required the heavy physical effort involved in climbing over and around box cars to adjust their vents, collapse their bunkers, and close and seal their doors. In addition, the employees were required to lift various objects weighing more than 25 pounds and in some instances more than 50 pounds.

The Railroad argued that it was their policy to exclude women generically from such positions for two basic reasons, one of which was the arduous nature of the work related activity which rendered women physically unsuited for the jobs, and the other reason is not applicable here. The court, in upholding the summary judgment in the district court, stated, in part, on page 1225:

"The premise of Title VII, the wisdom of which is not in question here, is that women are now to be on equal footing with men. Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 236 (5th Cir. 1969). The footing is not equal if a male employee may be appointed to a particular position on a showing that he is physically qualified, but a female employee is denied an opportunity to demonstrate personal physical qualification. Equality of footing is established only if employees otherwise entitled to the position, whether male or female, are excluded only upon a showing of individual incapacity. See Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 718 (7th Cir. 1969). This alone accords with the Congressional purpose to eliminate subjective assumptions and traditional stereotyped conceptions regarding the physical ability of women to do particular work."

In Parham v. Southwestern Bell Telephone Company, 433 F.2d 421 (8th Cir. 1970), at page 426, the court pointed out that "[i]n cases concerning racial discrimination, 'statistics often tell much and Courts listen'." The court held that where the statistics revealed an extraordinarily small number of black employees, except for the most part as menial laborers, there was a violation as a matter of law of Title 7, the Civil Rights Act of 1964.

In Bowe v. Colgate-Palmolive Company, 416 F.2d 711, the Seventh Circuit struck down a job restriction imposed by appellee which confined women to jobs not requiring the lifting of more than 35 pounds. The Appellate Court held that the trial court should have entered an injunction prohibiting the company from continuing the weight requirement limitation confined to women only. The court did allow the Colgate-Palmolive Company to retain a 35 pound weight lifting limitation as a general guide-line for all its employees, male and female, however, it required Colgate-Palmolive to notify all of its workers that such of them who desire to do so would be afforded a reasonable opportunity to demonstrate his or her ability to perform more strenuous jobs on a regular basis. In discussing the trial court's error in not granting a preliminary injunction, the court stated that had the trial court correctly perceived the meaning of BFOQ, it would have issued an injunction.

In the light of these decisions, it now becomes apparent to this Court that the 150 pound minimum weight requirement as it is administered by Ford, although neutral on its face, is highly discriminatory in practice and violative of the Civil Rights Act, Title 42 U.S.C. § 2000e et seq. The plaintiff is entitled to an injunction prohibiting Ford from continuing its 150 pound minimum weight requirement policy, especially as it is now administered.

The question of what further relief, if any, should be accorded to plaintiff and members of her class is not a

matter that lends itself to easy resolution by means of the summary judgment procedure. See Bowe v. Colgate-Palmolive Company, supra at page 719. Therefore, a trial must be held to determine the question of damages, if any, to be awarded to plaintiff and other members of her class, and the question of attorneys' fees to be awarded to plaintiff's counsel. Also, the Court must reserve until trial its final adjudication as to what type of injunctive relief should be necessary to fully implement the policies of the Equal Opportunity portion of the Civil Rights Act.

The Court has this day fashioned a partial summary judgment and an injunction in accordance with this memorandum opinion. Inasmuch as this action has been on the docket for a rather lengthy period, it is the Court's wish to assign it to trial at the earliest possible date following a pretrial conference. It is believed by the Court that it would be helpful to the Court and counsel to hold a pretrial conference on the *23rd day of January, 1973*, to discuss fully the problems which face the parties and the Court with reference to trial. Such a conference would be helpful also in determining the nature of notice to be sent to potential members of the class which Dolores Marie Meadows represents.

## SUPPLEMENTAL OPINION

On June 14, 1973, the Court entered its order allowing plaintiff to maintain this action as a class action, pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. That order also defined the nature of the class and held that it was necessary to notify the members of the class represented by the plaintiff. The questions as to the details of the notice and the burden of expense thereof were reserved. That order also required counsel to submit their contentions as to attorneys' fees, proposed findings of fact, conclusions of law, and proposed forms of notice; also,

parties were required to submit proposed judgments.

Going first to the question of the form of notice, it is observed that no notice is required in class actions arising under Rule 23(b)(2), but that such notice may be given pursuant to the provisions of Rule 23(d)(2). The giving of notice in this action, while possibly representing an over-exercise of caution, will fulfill the requirements of due process to which a class action is, of course, subject. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) and Mullane, Special Guardian v. Central Hanover Bank and Trust Company, Trustee, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

While it is true that the designation of this action as a class action, pursuant to Rule 23(b)(2), makes any judgment entered by this Court binding on all members of the class and, therefore, destroys any opportunity for them to opt in or opt out, it is believed that the notice will be useful, in that the Court feels that it should require the members of the class to notify counsel for plaintiff as to whether or not they wish to be placed in the pool of persons who may be selected for employment by Ford, pursuant to the Court's final judgment, and in accordance with the decision of the First Circuit in Castro v. Beecher, 459 F.2d 725 (1972).

The Court has, therefore, prepared a form of notice to be sent out by plaintiff's counsel to all females who have applied for employment on the production line at the Ford Motor Company, Kentucky Truck Plant, on Westport Road, Jefferson County, Kentucky, between April 1, 1971 and April 13, 1972. A copy of that form is attached to this opinion.

As to the expense of notifying the members of the class, it has generally been held that the initial cost must fall upon the plaintiff. However, this is true since usually the identity of the

class and its notification are accomplished early during the proceedings, where there is strong doubt that the plaintiff will prevail. In the instant case, the class action order has come very late in the proceedings, and at a time when the Court has already determined that the plaintiff and the members of her class are entitled to recover on their demands for injunctive relief. Therefore, the expense of sending the class action notices out must be borne by the defendant. See Eisen v. Carlisle and Jacquelin, 52 F.R.D. 253 (D.C.S.D.N.Y. 1971) and Dolgow v. Anderson, 43 F.R. D. 472 (E.D.N.Y.1968).

The Court recognizes that the first of these two cases cited has been reputiated by the Second Circuit, Eisen v. Carlisle and Jacquelin, 479 F.2d 1005 (decided 5/1/73). The rationale of the appellate holding is that Judge Tyler should not have assessed the cost of class action notices against the defendants on the basis of his guess as to the outcome of the action. In the instant case, the Court is not guessing as to the outcome of the action, but has already formulated the outcome and determined it. Only details as to the method of perfecting the remedies available to the plaintiff, insofar as hiring goes, remain to be accomplished by the Court.

At this late date in the proceedings, the plaintiff is attempting to take new discovery and to reopen the designation of the members of the class. Plaintiff contends that she was not the only female who applied for production work at the defendant's plant during the period October 10, 1969 to April 1, 1971, and in support of her theory, that a newspaper advertisement should be placed, seeking to ascertain whether any females, other than her, did apply for employment during that period. She has filed two affidavits which establish only that two females applied for employment at the Kentucky Truck Plant during the fall of 1969. One of the affidavits states that she has no interest in the lawsuit, and neither of them state the date when they applied for employment, but merely fix it as being during the fall.

Plaintiff maintains that since defendant has destroyed its employment records for the period in question, that it should advertise to publicly determine whether there were any other female applicants for employment on the production line during the period in question. Plaintiff cites a letter sent by her counsel during June, 1970, as requiring Ford, under applicable regulations, to maintain employment records thereafter. However, the regulation cited by plaintiff requires only that Ford maintain such records after the filing of a formal grievance with the E.E.O.C., which was not done until 1971. See 29 C.F.R. §§ 1602–14.

Coming next to the question of attorneys' fees, plaintiff's counsel have filed an affidavit stating they have devoted approximately 275 hours to the prosecution of this case, and they ask for a fee of $30,000. Some of the 275 hours were apparently spent in proceedings before the E.E.O.C., but the Court takes recognition of the fact that this case has been hotly contested for a period of two years and that the pleadings, briefs and conferences held have been numerous and have required a considerable amount of skill on the part of plaintiff's counsel.

The Court has examined closely the case of Clark v. American Marine Corporation, 320 F.Supp. 709 (D.C.E.D.La. 1970), where District Judge Rubin carefully analyzed a claim for attorneys' fees made under Title 7 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In that case Judge Rubin pointed out that plaintiffs' attorneys did not recover back wages for their clients, but that they successfully and skillfully attacked a pattern of covert discrimination in employment on behalf of a class composed of the victims of the discrimination and secured extensive relief. He cited extensive authority for the proposition that counsel for plaintiffs were entitled to a

reasonable attorneys' fees, which citation this Court adopts by reference.

■ Judge Rubin also sets out on pages 711 and 712 Canon 12 of the Canons of Ethics of the American Bar Association, and the factors to be considered in setting a reasonable attorney's fee. This Court also adopts those factors as a part of this opinion, and has considered them in fixing the attorneys' fees. After duly assessing all of these factors, it is the opinion of this Court that counsel for plaintiff should be awarded a fee of $11,500, to be taxed as part of the costs. It will be noted that in Clark v. American Marine Corporation, supra, the amount of time spent was approximately 580 hours, whereas in the instant case, probably 250 hours should be used as a reasonable basis for determination.

Coming next to the question of costs, plaintiff is claiming, among other items, $244.20 for expenses of copying the records of the Ford Motor Company, which show all applications for employment on the production line during the period between October 10, 1969 and April 1, 1971. These documents contain statistical information as to the number of male and female applicants who applied for employment at Ford on the production line and those who were actually employed. If the Court had not entered its partial summary judgment, based on the discovery procedures employed by plaintiff, it seems apparent that these documents would have been necessary for use at trial, to show the extent of the discrimination practiced by defendant in excluding females from work on the production line.

■ The applicable statute is 28 U. S.C. § 1920(4), which provides as follows:

"A judge or clerk of any court of the United States may tax as costs the following:

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;"

It has been held that where records or papers are copied by counsel for the prevailing party in preparation for trial, that their costs may be recovered, even though no trial is actually held. See American Title and Trust Company v. Gulf Refining Company, 72 F.2d 248 (2nd Cir. 1934) The Court, therefore, holds that the costs requested by plaintiff are taxable, and that plaintiff is entitled to recover such costs.

■ Finally, plaintiff is now contending that defendant has either put in a height requirement for employment on the production line, or intends to do so. Defendant vigorously denies this contention. Plaintiff seeks to take further discovery in the matter, and the Court holds that this cannot be done for, regardless of the merits of plaintiff's allegation, this case is concerned only with the complaints growing out of the 150 pound weight requirement formerly imposed by the defendant and now no longer in effect.

In order to facilitate the disposition of this action, the Court has, under separate cover, filed its findings of fact and conclusions of law. It is the opinion of the Court that, after the members of the class have reported to counsel for plaintiff as to whether or not they wish to still be included as prospective employees by Ford, and counsel for plaintiff have reported to the Court the results of such inquiries, then the Court will be in a position to enter its final judgment.

It should also be noted that the Court has this day decided to sustain the motion of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 862. This action is taken inasmuch as said defendant has no control over the employment or discharge of employees at Ford Motor Company, and no proof has been shown that it in any way participated in the discriminatory practices of the Ford Motor Company.

Appropriate orders in accordance with this opinion have been entered this day.

APPENDIX

NOTICE OF PENDENCY OF
CLASS ACTION

Dolores Marie Meadows, an applicant for employment at the Ford Motor Company, Kentucky Truck Plant, on Westport Road, in Jefferson County, Kentucky, has filed an action in this Court against the Ford Motor Company and other defendants, who have been dismissed by this Court.

This action, which was filed on July 20, 1971, asserts claims for declaratory and injunctive relief, including hiring opportunities, backpay and seniority rights, on behalf of herself and all females who have made application for employment on the production line of the Ford Motor Company at its Kentucky Truck Plant, Westport Road, Jefferson County, Kentucky, from October 10, 1969 to April 13, 1972.

1. The Court has determined, since the filing of the suit on July 20, 1971, that this action is a class action, brought on behalf of the plaintiff and all females who have made application for production employment from April 1, 1971 to April 13, 1972, at the Kentucky Truck Plant, Westport Road, Jefferson County, Kentucky, operated by Ford Motor Company, and who have been denied such employment.

2. The aforesaid action was brought pursuant to the provisions of Title 7 of the 1964 Federal Civil Rights Act, 42 U.S.C. § 2000e et seq., and alleges that Ford Motor Company has failed to provide to the females seeking employment during the applicable time periods of employment, opportunities and benefits to which they would have been entitled had they not been discriminated against because of their sex. Ford Motor Company has denied the alleged violations of the Civil Rights Act and has asserted various affirmative defenses.

3. The Court has ruled that the 150 pound weight requirement imposed by the Ford Motor Company as to persons applying for employment on its production line at the Westport Road Plant was discriminatory against females and in violation of Title 7 of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.

4. The Court has also ruled that no backpay will be awarded to the plaintiff, Dolores Marie Meadows, or any member of the class represented by her. The Court has, however, held that it will require the defendant, Ford Motor Company, to employ a system whereby the plaintiff and the females who have applied for production work at the Kentucky Truck Plant during the period April 1, 1971 to April 13, 1972, will be assured of equitable methods of employment as new employment vacancies become available.

5. In order for the Court to determine how many females, who applied for employment at the Ford Motor Company during the period April 1, 1971 to April 13, 1972, still wish to be considered for employment by that company, it will be necessary for you, as a member of that class, to advise Ewen, MacKenzie and Peden, attention James C. Hickey, Esquire, 2100 Commonwealth Building, Louisville, Kentucky, 40202, on or before October 1, 1973, as to your intentions in this matter. If no reply is received from you by James C. Hickey, Esquire, the Court must assume that you no longer have an interest in being employed at the Ford Motor Company on its production line.

It will not be necessary for you to take any action as a result of this notice, other than to notify counsel for plaintiff of your desire as to being considered for employment, since your interests will otherwise be protected by plaintiff and her counsel. The final judgment and any relief afforded to the class will be binding on you.

6. You are entitled, if you so desire, to enter an appearance either individual-

ly or through legal counsel of your choice, and to participate in any remaining proceedings of this action.

7. The entire court file in this action is available for inspection at the office of the Clerk of the United States District Court for the Western District of Kentucky, Room 267, United States Courthouse, Louisville, Kentucky.

8. Any inquiries concerning this matter by you or your counsel should be addressed to James C. Hickey, Esquire, 2100 Commonwealth Building, Louisville, Kentucky, 40202, 589–1110.