Jeffrey MACARZ

v.

TRANSWORLD SYSTEMS, INC.

No. 3:97CV2194 JBA.

United States District Court,
D. Connecticut.

Jan. 8, 2001.

Order granting publication of class
Notice May 11, 2001.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Rick D. Young, Edelman, Combs & Latturner, Chicago, IL, for plaintiff.

Robert W. Allen, Tyler, Cooper & Alcorn, New Haven, CT, Christopher M. Mazzia, Anderson, Zeigler, Disharoon, Gallagher & Gray, Santa Rosa, CA, for defendant.

### *RULING ON PENDING MOTIONS*

ARTERTON, District Judge.

Following this Court's ruling on September 21, 1998 granting summary judgment in favor of the plaintiff on his claim that defendant's debt collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Court granted class certification on April 19, 2000. Now, plaintiff has moved for approval of its proposed class notice and for an order directing the defendant to mail both the proposed notice and the ruling on liability to all class members. The class certified by the Court's

April 19, 2000 ruling is composed of: "All Connecticut residents who (1) were sent a collection letter by Transworld where (2) the letter was in the same form as the letter sent to plaintiff, and (3) the letter concerned a debt which from the records of the creditor or the nature of the debt, was a non-business debt." Doc. # 57, at 3.

Expressing great outrage, defendant has moved to decertify the class. In the alternative, defendant objects to the proposed notice, the mailing of the ruling on liability, the proposed class termination date and to notice by mail.

### A. Defendant's Motion to Decertify [Doc. # 60]

■ The basis for the majority of defendant's objections is the following excerpt from plaintiff's proposed class notice:

Class counsel believes that, because (1) liability has been determined, and (2) the large number of class members, it is advisable to exclude yourself to pursue an individual action. Class counsel may be willing to represent you if you chose this option. If you want your own attorney to represent you in an individual case, the terms of such representation are a matter for you and your attorney to negotiate.[1]

Defendant argues that because this constitutes a "bold-faced attempt to abuse the class action device by turning it into a method of soliciting individual actions," this Court should decertify the class. Transworld also claims that because plaintiff has now stated that the class action is *not* a superior means of pursing the claims of the class members, the class should be decertified. As the defendant notes, this change of position by plaintiff is particularly troubling given plaintiff's previous arguments to this Court in support of class certification, in which plaintiffs argued that "[i]n this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor."

Plaintiff attempts to explain this change of tune by arguing now that a "class action is

superior for the 99% of class members who don't care to bring $1,000 lawsuits; the small number of class members who are willing to pursue individual claims are better off doing so." *See* Doc. # 63, at 6. In his motion for class certification, plaintiff argued that a class was superior because the majority of class members were unaware that their FDCPA rights were violated and the majority of class members would not be likely to retain counsel and bring suit. If the class is decertified now, however, the putative class members would not receive notification that their FDCPA rights were violated by Transworld.

Thus, the reasons that led this Court to rule that a class action is the most efficient and effective way to pursue this litigation remain in effect. *See* Doc. # 57 at 16–20. Defendant has set forth nothing that shows that this is no longer the case. Finally, modifying the proposed notice will adequately remedy any possible "abuse" of the class action process by plaintiff's counsel. Therefore, defendant's motion to decertify the class is denied.

### B. Plaintiff's Motion for Approval of Notice [Doc. # 59]

#### 1. *Content of the notice*

Fed.R.Civ.P. 23(c)(2) provides that "[i]n any class maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel."

■ In addition to the requirements of Rule 23(c)(2), notice to the class members

---

1. The proposed notice also informs the putative class members about their possibilities for recovery in either a class action or an individual suit, and states that "[b]ecause of the number of class members, each member may receive less that $10."

must contain "objective, neutral" advice. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1092 (5th Cir.1977); *Erhardt v. Prudential Group Inc.*, 629 F.2d 843, 846 (2d Cir.1980) ("Notice to class members is crucial to the entire scheme of Rule 23(b)(3). It sets forth an *impartial* recital of the subject matter of the suit, informs members that their rights are in litigation, and alerts them to take appropriate steps to make certain their individual interests are protected. It also preserves the right of class members to 'opt out' if they believe their interests are antagonistic to the other class members, or if they wish to proceed by separate suit.") (emphasis added). The Court bears the responsibility of directing the "best notice practicable" to class members and of safeguarding them from "unauthorized, misleading communications from the parties or their counsel." *Id.; see also Schisler v. Heckler*, 787 F.2d 76, 86 (2d Cir.1986) ("the district court should examine that notice, and fashion its own more effective notice, if necessary.").

█ The notice proposed by plaintiff meets certain requirements of Rule 23(c) by informing class members of their right to opt out of the class, that they will be bound by any judgment reached if they do not opt out, and the likely maximum amounts of recovery under either an individual or the class action, from which class members may draw their own conclusions as to whether it is in their best interests to remain in the class or opt out. *See* Proposed Notice, at 2–3. However, the sentences advising the class members that their class counsel believes they *should* opt out of the class are neither objective or neutral and are therefore improper. *See id.* at 3.[2] In addition, the policy interests behind Rule 23(b)(3) of providing "fair and efficient adjudication" are not served by encouraging putative class members to opt out of the class. *Cf. In re Nissan*, 552 F.2d at 1105 (class members should be advised of proposed settlement, in part because "[t]he binding scope of the present action would be directly diminished by that number of class

members who decided to opt out of the action but who otherwise would have utilized the class action device if information of the proposed settlement had appeared in their subdivision (c)(2) notice."); *McCarthy*, 164 F.R.D. at 312 ("inclusion of any specific notice must be balanced against the possibility that it may operate as a disincentive to join the class"). Further, the sentences indicating that Edelman, Combs & Latturner may be willing to represent plaintiffs in individual cases or that plaintiffs may make arrangements with their own counsel are duplicative of other less leading information in the notice stating that class members should contact either class counsel or their own attorney if they wish to opt-out. The class notice is not a vehicle to assist class counsel in soliciting new clients. For the foregoing reasons, the sentences quoted in footnote four of this ruling must be stricken from the class notice.

█ Defendant also objects to any references in the notice to a finding of liability by this Court. Citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977), plaintiff argues that the fact that the Court has ruled on the merits against defendant is "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."

"A class certification notice should advise the class members of their rights and obligations if they elect to remain class members." *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 312 (D.Conn.1995). In *In re Nissan Motor Corp.*, the court considered whether the class notice should inform the class members of a proposed partial settlement that the lead plaintiff and defendant had reached. 552 F.2d at 1105. The court noted that withholding information on the settlement on the theory that some class members might want to pursue individual actions "would only needlessly squander or

2. The sentences addressed by this discussion are the statement that: "Class counsel believes that, because (1) liability has been determined, and (2) the large number of class members, it is advisable to exclude yourself to pursue an individual action. Class counsel may be willing to represent you if you choose this option. If you want your own attorney to represent you in an individual case, the terms of such representation are a matter for you and your attorney to negotiate."

dissipate those energies and resources that the class representatives, defendants, and the federal court system have already committed to resolving this controversy." *Id.* Inclusion of the settlement information also would encourage class members to remain in the class, thereby furthering the federal judicial interest in "expanding and enhancing the res judicata effect of each 23(b)(3) class action." *Id.* at 1106. Other courts have approved notice that informs the class members that liability has been granted in their favor, although without discussion of the reasons for doing so. *See, e.g., Catlett v. Missouri Highway and Transp. Comm'n,* 589 F.Supp. 949, 952 (W.D.Mo.1984) (notice to inform class members that defendant has been found to have discriminated against women in hiring); *Six Mexican Workers v. Arizona Citrus Growers,* 641 F.Supp. 259, 261 (D.Ariz.1986) (notice to inform class members "of their right to recover their individual statutory damage awards").

In contrast, however, one court considering a post-summary judgment class certification noted with approval the fact that the class notice did not "inform [the class] as to the existence of any judgment in their favor, thus reducing substantially the 'one way street' danger of post-judgment certifications." *Postow v. OBA Federal Savings & Loan Ass'n,* 627 F.2d 1370, 1383 (D.C.Cir. 1980). The court observed that under Rule 23(c)(3) that class members must be informed that they will be bound by the judgment "whether favorable or not," which was added to Rule 23 "to avoid 'one-way' intervention, i.e., allowing members of a Rule 23(b)(3) class the option of joining an action as plaintiffs after a favorable judgment on the merits while avoiding the res judicata effect of an adverse decision by not joining if the named plaintiffs have been unsuccessful." *Id.* at 1395. By not informing the class members of the outcome of the ruling in the notice, the court believed it prevented them from reaping the benefit without any risk, as the class members had to decide whether to opt-out without knowing that the class had prevailed.

Under the reasoning of *In re Nissan,* the fact that the Court has ruled on liability in

plaintiff's favor is properly included in the notice. Class members are more likely to remain in the class if they are aware that liability has been determined in their favor, thus preserving judicial resources and their rights. A decision made about whether to opt out or not without this information cannot be considered "informed." *See In re Nissan,* 552 F.2d at 1105 ("[i]f the initial class notice does not include information on the proposed settlement, however, an absentee class member lacks an essential factor in the decisionmaking equation"). Moreover, as the maximum class damages are fixed by statute, encouraging class members to remain in the class will not increase damages owed by defendant. Under these circumstances, the *Postow* court's concern that notifying the plaintiffs about liability prior to their decision to opt-out gives them the sweet without the bitter is outweighed by the class members' interest in making an informed decision and the judicial interests in expanding the binding effect of the class action, particularly given defendant's present efforts to prevent plaintiff from including information in the notice that will operate to discourage class members from remaining in the class and to expand the cut-off date for the class certified. The fact that the Court has ruled in plaintiffs' favor on liability, therefore, is properly included in the notice.

■ However, plaintiff provides no explanation as to why the Court should order defendant to mail the thirteen page ruling on liability to each of the class members, and no purpose, apart from furthering burdening defendant, is apparent. As the Court's ruling on liability is published at 26 F.Supp.2d 368 (D.Conn.1998), the class may be informed of that citation. With this information added, the concise statement contained in plaintiff's proposed notice will adequately protect the rights of the class members. That part of plaintiff's motion seeking an order requiring mailing of the order with the class notice is denied.

### 2. *Costs of notice*

■ Plaintiff asserts that because liability has already been determined, defendant bears the cost of notice to the class. Al-

though the Supreme Court in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), held that "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class," a number of courts have held that where notice is to occur *after* liability has been determined, the defendant appropriately bears the costs. *See, e.g., Hartman v. Wick,* 678 F.Supp. 312, 328–29 (D.D.C.1988) ("As the Court has already found defendant liable, defendant must bear the full expense of this notification task."); *Catlett,* 589 F.Supp. at 951 ("cost allocation [to the defendant] is proper once the defendant's liability has been established"); *Six Mexican Workers,* 641 F.Supp. at 264 (same); *Meadows v. Ford Motor Co.,* 62 F.R.D. 98, 101 (W.D.Ky.1973) (same). As defendant does not contest that it bears the cost of notice, defendant is ordered to pay for the cost of notice to the class members.

### 3. *Form of notice*

Plaintiff and defendant part company again, however, over whether notice by publication is adequate here or whether notice by mail to the estimated 38,259 class members is required. Plaintiff claims that only notice by mail to each class member will suffice, while defendant asserts that such notice is unreasonable under the circumstances here, and notice by publication in the major Connecticut newspapers is adequate under Fed. R.Civ.P. 23(c)(2). For the following reasons, notice by mail is required here.

Rule 23(c)(2) provides in part that "the court shall direct to the members of the class the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." Because constructive notice has "long been recognized as a poor substitute for actual notice and its justification is difficult at best," *Eisen,* 417 U.S. at 175, 94 S.Ct. 2140, it is only to be used where circumstances "make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency." *In re Nissan,* 552 F.2d at 1097 (*citing Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

"No single formula can be derived which will anticipate the myriad circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort required is reasonable." *Id.* Whether notice by mail is required depends on the information available to the parties. *See id.* at 1098. However, "the word 'reasonable' cannot be ignored. In every case, reasonableness is a function of anticipated results, costs, and amount involved." *Id.*

In *In re Nissan,* the defendant had the names and addresses of the purchasers of Datsun cars from 1966–1975 stored on 1.7 million "Retail Delivery Report" (RDR) cards, and a computerized listing of the names and addresses of current Datsun owners. It was undisputed that the computerized list did not contain the names and addresses of all original Datsun retail purchasers, the certified class. The district court had approved notice sent to the computerized list of current owners, characterizing the "examination of the 1,700,000 RDR cards to extract the class members' names and addresses as an 'herculean task' and an 'unnecessarily time consuming and burdensome process.'" *Id.* at 1096. The Fifth Circuit reversed, on the grounds that the "RDR cards provide the court with the best available listing of the names and addresses of all class members. Indeed, the parties agree on this. They only shy away from undertaking the effort. *While the search cannot be made with push-button ease, its advantages bring the effort required within the range of* reasonableness." *Id.* at 1099 (emphasis added). The court also noted that the characterization of the effort as "herculean" was accurate only with respect to the size. "The key, though, is reasonable effort, and a large class requires a large effort. . . . While the mechanical process of examining the cards may prove to be expensive and time consuming, the individual right of absentee class members to due process makes the cost and effort reasonable." *Id.* at 1100.

Similarly, in *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 345, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), in ruling on the question of whether plaintiff or defendant bore the

cost of class notice, the Supreme Court upheld notice by mail despite the fact that defendants had

> testified that in order to compile a list of the class members' names and addresses, they would have to sort manually through a considerable volume of paper records, key punch between 150,000 and 300,000 computer cards, and create eight new computer programs for use with records kept on computer tapes that either are in existence or would have to be created from the paper records. The cost of these operations was estimated in 1973 to exceed $16,000.

The Court ruled that the plaintiff was required to bear this cost of notifying the class at the outset of the case. *Id.* at 357–60, 98 S.Ct. 2380.

In contrast, in the cases that have not required notice by mail, the only lists of potential class members available were both over- and under-inclusive, causing the courts to conclude that notice by mail was unreasonable under the circumstances. For example, in *In re Domestic Air Transportation Antitrust Litigation,* 141 F.R.D. 534, 546 (N.D.Ga.1992), the court found that notice by mail was not required when the only list that could be created from the business records of the defendants was "not a list of class members," but rather a list of people associated with particular credit card numbers who might or might not be class members. The class certified was a group of domestic airline passenger ticket purchasers. Because of the way the defendants' records had been kept, the list of names associated with the credit card numbers, however, corresponded to all those people contractually responsible for paying the credit card account, including multiple responsible parties for some accounts, and certain non-contractually responsible authorized users, but not all. The court found that this list was over-inclusive because where there were multiple authorized users of the same card, there was no way to determine which person had actually purchased the ticket. Further, the list was deemed under-inclusive because where the purchaser of the ticket was not contractually responsible for the debt, the purchaser might

not be included on the list. *Id.* at 542–44. The court distinguished *Eisen* and *Nissan* on the grounds that in those cases, "the records kept by defendants indisputably contained the universe of class members. Notice to a list that included this universe as well as other non-class members would necessarily result in notice to a substantial number of class members." *Id.* at 546. Similarly, in *Carlough v. Amchem Prods. Inc.,* 158 F.R.D. 314, 328 (E.D.Pa.1993), the court held that notice by mail was not required where the proposed method of determining the list of class members "would, after burdensome and expensive efforts, produce at best a list of names and outdated addresses that would represent only a fraction of the class, and that would include many names of non-class members. It would not be reasonable to mail individual notice packets to these persons, especially in light of the extensive, and probably more effective, notice plan proposed by the parties and described above."

Here, defendant claims that it stores the names and addresses of the people who receive its letters in active memory on its computers for three to four months. After that, the information is downloaded onto backup computer tapes. Transworld does not currently have the technical capacity to recover the stored names and addresses from the data tapes. It is undisputed, however, that these tapes do contain the names and addresses of the universe of class members, as well as some non-class members. Transworld also explains that in order to recover the data in usable form, a computer software program would have to be created and tested; this would take approximately 200 hours, at a cost of approximately $25,000, not including the cost of Transworld personnel or equipment, though no estimate is made as to what the additional costs might be. Transworld estimates that it would take approximately one month to compile the list.

Finally, defendant argues that even were it to create the database of names and addresses, the list would not be a list of class members because an unknown, and allegedly unknowable, subset of the names on that list would be commercial, rather than consumer, accounts, i.e., non-class members, Trans-

world estimates that approximately 25 percent of the letters were sent to commercial debtors, and it does not distinguish between commercial and consumer debtors in any way in the letters. Therefore, Transworld claims, the only way to determine whether a debt is commercial or consumer would be to ask each individual debtor. Finally, Transworld asserts that the it would cost approximately $38,500 to mail the notice to the class once a list were created.

If a list of plaintiffs already existed, the fact that mailing the notice would cost Transworld approximately an additional $38,500 would not be relevant to determining whether notice by mail is reasonably practicable. *See Eisen*, 417 U.S. at 175, 94 S.Ct. 2140 (requiring notice by mail to 2.5 million class members because "the express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members whose names are identifiable through reasonable effort"). The reasonableness inquiry here therefore must be applied to the question of whether defendant may be required to create a list of plaintiffs where the data containing the names of class members indisputably exists and the barrier to creating the list is $25,000, taking into account the "anticipated results, costs, and amount involved." *In re Nissan*, 552 F.2d at 1099.

Here, the data indisputably contains the universe of class members (albeit a twenty-five percent over-inclusive list). This weighs heavily in favor of requiring individual notice. In *In re Domestic Air Transportation*, on which defendant relies, the court held that notice by mail was not required because "the TRW tape is not a list of class members, [and] there is no way to assure that notice to the list would definitely result in notice to a substantial number of class members." 141 F.R.D. at 546. In this case, however, approximately three-quarters of the notices sent to the names on the proposed list would result in notice to all class members. Although "it is not necessary to send individual notice to an overinclusive group of people simply because the group contains *some* additional class members whose identities are unknown," *Carlough*, 158 F.R.D. at 327 (em-

phasis added), it is undisputed that the list here contains *all* the class members, none of whom are known without it.

In addition, the current estimated cost of preparing the list of $25,000, which while not insubstantial, bears some equivalency to the approved $16,000 in 1973, which the Supreme Court required the plaintiff to spend in *Oppenheimer*. Finally, defendant argues that because the individual recovery is so small in this case, notice by mail not necessary, an argument very close to that made in *Eisen*, which the Supreme Court rejected, stating that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen*, 417 U.S. at 176, 94 S.Ct. 2140.

Under all these circumstances, notice by mail is required.

## C. Cut off date

Finally, plaintiff asks that the Court limit the class to those people who received letters mailed before December 31, 1999. Defendant contends that such a cut-off date is an inappropriate attempt to ensure that additional class actions may be brought challenging this letter. In response, plaintiff asserts that the class closure question is moot as defendant stopped using the letter on approximately December 31, 1999. Defendant does not state when, or if, it ceased mailing the letter.

Plaintiff provides no other reason why the class should be limited to December 31, 1999, if indeed any letters were mailed after that date. Factually, nothing distinguishes those debtors who received the letter on December 30, 1999 and those who received it on January 2, 2000 that would suggest that such a cut-off is necessary. Moreover, although plaintiff raises the specter of administrative problems, neither party has shown that any difficulties would arise from extending the class to a more recent date, such as the docketing date of this ruling. And, if the challenged letter was still sent after December 31, 1999, the addresses of any recipients who received the letter in the past three to four months would still be stored on defendant's current computer system, and easily

accessible for inclusion in the list of names for notice.

Given that plaintiff has offered no persuasive explanation for arbitrarily closing the class on December 31, 1999, the cut-off date for the class shall be the date this ruling is docketed.

### D. Conclusion

For the reasons discussed above, plaintiff's motion for approval of the mailing of class notice and of order granting judgment on the pleadings against the defendant [Doc. # 59] is GRANTED IN PART AND DENIED IN PART. Defendant's motion to decertify class, or in the alternative, objection to proposed notice and motion for notice by publication [Doc. # 60] is GRANTED IN PART AND DENIED IN PART. Defendant's Motion to Supplement the Record [Doc. # 66] is GRANTED.

The parties are directed to submit a revised proposed notice consistent with this ruling in ten (10) calendar days from docketing, with all proposed applicable dates, including dates for mailing of the notice, opt-out, objections, filing of proof of claim, the fairness hearing and any other applicable dates.

Although plaintiff's proposed notice does not include information related to the filing of proof of claim, the revised proposed notice shall include such information, to avoid the need for costly multiple mailings to the entire class.

IT IS SO ORDERED.

### RULING ON DEFENDANT'S RENEWED MOTION FOR NOTICE BY PUBLICATION [Doc. # 72]

This Court previously ruled [Doc. # 70] that individual notice by mail to the putative class members in this Fair Debt Collection Practices Act class action was required under Fed.R.Civ.P. 23(c)(2)'s mandate that "[i]n any class maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Defendant has now filed a renewed motion for notice of publication, arguing that under the circumstances here, notice by publication is the best notice practicable under the circumstances. For the reasons discussed below, the Court agrees that the changed circumstances set forth by defendant are such that mail notice to class members is no longer the best notice practicable under the circumstances.

### Discussion

According to defendant, the following factors are relevant to the question of the appropriate form of notice:

(1) The case has been settled and the substantive terms of the settlement are a payment of $219,000 to the class, plaintiffs' attorneys' fees to be set by the Court with a cap of $75,000 and a $3,000 payment to the named plaintiff.

(2) In attempting to create a class list pursuant to the Court's ruling, Transworld has sampled eleven of the sixty-one months at issue to estimate the number of contacts. That sampling showed that during eleven months, 16,233 debt collection letters were sent. Based on this sampling, an estimated 75,216 total debt collection letters were sent, almost twice the original estimate.[1]

(3) Approximately 25% of these letters were with respect to commercial debt; defendant asserts that 20–25% of consumer debtors change addresses each year; and the class period is now more than four years in length. Therefore, according to defendant, "[i]t seems almost certain that more than half the notices sent would be sent to non-class members or to no one." Def. Br. at 3.

(4) "Connecticut is a small state and its newspapers of general circulation cover it completely." Def. Br. at 3.[2]

---

**1.** As approximately 25% of these notices involved commercial debt, and the class is limited to those persons who received notice letters involving consumer debt, approximately 56,411 (75% of 75,216) letters were mailed to class members.

**2.** Defendant also notes that a court in the Central District of California approved notice by publication in *USA Today* in a nationwide class involving the same notice letter which is the subject of the present class. However, in the absence of

The issue on reconsideration is whether, in light of evidence that the notice list will be both over- and under-inclusive, resulting in approximately half the notices mailed being sent to non-class members or to outdated addresses of class members, requiring individualized notice by mail remains "reasonable." As this Court previously observed, whether notice by mail is required depends on the information available to the parties, and in assessing what notice is required, "the word 'reasonable' cannot be ignored. In every case, reasonableness is a function of anticipated results, costs, and amount involved." Ruling at 11 (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir.1977)).

Although defendant describes in some detail the various steps necessary to create the class list and has observed that with the increase in class size to approximately 75,000 class members,[3] the cost of mailing the notice has increased, it has not provided any specific information showing that the original estimate of a $25,000 cost to create the list was inaccurate. As previously noted, the critical figure in the Court's determination of reasonableness is the cost to *create* the list, not the cost of mailing notice once the list is already created. *See* Ruling at 16.

Plaintiff asserts that where "the class members' addresses are available, the best notice practicable is notice by mail to the last known address of each class member as shown by defendant's records." Pl. Opp. at 1. Plaintiff first takes issue with defendant's argument that because 25% of the notices were mailed to commercial debtors, the list of names is over-inclusive, arguing that "the entire question of whether particular class members' debts are business or personal is utterly immaterial." *Id.* at 2. However, this argument ignores the critical fact that the class itself was defined as "All Connecticut residents who (1) were sent a collection letter by Transworld where (2) the letter was in the same form as the letter sent to plaintiff, and (3) the letter concerned a debt which from the records of the creditor or the nature of the debt, *was a non-business debt.*" Ruling on Class Certification, Doc. # 57, at 3. Accordingly, recipients of letters concerning commercial debts are not class members. Therefore, the Court agrees with defendant that the list is necessarily over-inclusive.

Plaintiff also notes that a defendant's "inability to weed out a small quantity of business debts from the class" should not be permitted to prevent proper notice; the Court agrees. In fact, the Court's previous conclusion that notice by mail was required under Rule 23 was based, in large part, on the fact that—as represented to the Court by both parties—the defendant would be capable of creating a class list that included *all* the consumer debtor class members, although that list would be somewhat over-inclusive, as approximately 25% of the names and addresses on that list were those of business debtors. This determination was critical, and distinguished this case from other cases permitting notice by publication where notice by mail would have been both over-inclusive *and* under-inclusive. *See* Ruling at 13–17 (distinguishing *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534, 546 (N.D.Ga.1992); *Carlough v. Amchem Prods. Inc.*, 158 F.R.D. 314, 328 (E.D.Pa.1993)).

Defendant now represents that approximately 20–25% of consumer debtors change addresses annually. Plaintiff disputes the relevance of this figure, but does not dispute the figure itself. Because this class period encompasses a four year period, this means that the class listing at the end of four years may be accurate as to only approximately

---

any discussion in the decision of the facts that led Judge Pregerson to conclude that notice by publication "is the best notice practicable under the circumstances," the fact that another court in another action approved notice by publication is not particularly probative of how this Court should weigh the balancing of interests required to determine whether notice by mail is indeed "reasonable" under Rule 23.

3. As noted previously, the estimated *class* size, assuming the accuracy of defendant's sampling, is 56,411, not 75,000. However, because defendant cannot distinguish between consumer and commercial debtors based on its records, it would be required to mail notice to all 75,216 recipients of its debt collection letter.

60% of the addresses.[4] As U.S.P.S. mail forwarding service expires after a period of time, it is now obvious that many of the class members will not receive the notice if the Court orders mail notice from this list. *See Carlough,* 158 F.R.D. at 327 (noting that a factor to consider in assessing reasonableness of requiring defendant to generate class list was whether the addresses obtained would be current).

In addition, because the list of names would include the commercial debtors as well as the consumer debtor class members, sending notice to the admittedly over-inclusive group here would "most likely confuse the recipients and encourage [responses] by non-class members." *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. at 546; *see also Skelton v. General Motors Corp.,* 1987 WL 6281, *3, n. 3 (N.D.Ill. Feb.5, 1987) (rejecting mailing to over-inclusive list where the notice "could mislead many thousands of ineligible consumers into thinking that they qualify to recover in this action").

Under these circumstances, where notice by mail would result in only sixty percent of the class receiving notice and twenty-five percent of the notices would be sent to non-class members, requiring defendant to undertake the effort and expense required to prepare the list of names and addresses from its computer back-up tapes is not reasonable. *See Carlough,* 158 F.R.D. at 328 (notice by mail not required where the proposed method of determining the list of class members "would, after burdensome and expensive efforts, produce at best a list of names and outdated addresses that would represent only a fraction of the class, and that would include many names of non-class members"). Moreover, plaintiff has not rebutted defendant's contention that notice by publication in Connecticut's major daily newspapers is likely to reach a majority of the class members.

**Conclusion**

As requiring defendant to prepare the over- and under-inclusive list of addresses from its computer records is unreasonable,

notice by publication is the best notice practicable under the circumstances, thus satisfying the requirements of Fed.R.Civ.P. 23(c)(2). Defendant's renewed motion for notice by publication [Doc. # 72] is GRANTED. Defendant shall publish the class notice in all daily and weekly Connecticut newspapers of general circulation.

IT IS SO ORDERED.

---

**4.** Assuming the accuracy of defendant's 20% figure and an equal division of letters mailed in each of the four years of the class period (.25). To account for the fact that of the 80% who did

not move after the first year, 20% of those may be expected to move the second year, etc., the formula used is: $(((((.25 * .80) + .25) * .80) + .25) * .80 + .25) * .80) = .59$.